<hr />

## CHARLES H. SUTPHEN

### *v.*

## WILLIAM H. W. CUSHMAN *et al.*

1. MORTGAGE — *whether a deed, absolute upon its face, is a mortgage.* In determining whether a deed which purports to convey an absolute estate to the grantee, is to be regarded merely as a mortgage, courts will disregard testimony introduced for the purpose of establishing the understanding of the witnesses as to the nature of the transaction, or to prove the conversations of the parties.

2. Such a conveyance must be taken as the exponent of the rights of the parties, unless some equity is shown, not founded on the mere allegation of a contemporaneous understanding inconsistent with the terms of the deed, but independently, both of the deed itself, and of the understanding with which it was executed.

3. The right to redeem lands so conveyed cannot be established by simply proving that such was the understanding on which the deed was executed, because equity as well as the law will seek for the understanding of the parties

in the deed itself. The right must be one paramount to, and independent of, the terms of the deed, as well as of any understanding between the parties at the time it was executed.

4. Parol evidence is admissible so far as it conduces to show the relations between the parties, or to show any other fact or circumstance of a nature to control the deed and to establish such an equity as would give a right of redemption, and no further.

5. In the application of this rule, parol evidence is received to establish the fact that a debt existed, or money loaned on account of which the conveyance was made; for such facts will, in a court of equity, control the operation of the deed. So, too, in regard to any other fact or circumstance having the same operation.

6. Where the grantee in a deed, absolute upon its face, takes the conveyance on account of a preëxisting indebtedness, without in any manner canceling or discharging it, equity will regard the deed as a mortgage, whether he so regards it or not. He cannot hold the land absolutely, and at the same time retain the right to enforce the payment of the debt, on account of which it was made, and hold proceeds of collaterals pledged to secure its payment.

7. As such a deed must be regarded as a mortgage in respect to the indebtedness existing at the time it was made, it will be regarded in the same manner as to subsequent advances made by the grantee.

8. Where such a deed is taken on account of existing indebtedness, until the contrary is shown, the presumption is that the indebtedness was not satisfied by the conveyance; and absolute certainty in regard to the fact takes the place of presumption in case the creditor retains the evidences of the indebtedness, the securities pledged for its payment, and collects the money due upon such securities.

9. The grantor in such a deed will not be estopped from asserting the deed to be a mortgage, by recitals in a lease or other instrument, inconsistent with that fact, as equity will relieve him from any estoppel created by such instruments as well as from the estoppel created by the deed itself. An estoppel is created by the deed, and relief from it is granted because an equity is shown which requires it to be done. The same equity requires relief from the technical effect of all subsequent instruments.

10. BURTHEN OF PROOF — *when an account has been stated by one party.* Where a party has stated an account as existing between himself and another, and admitted it to be correct, he cannot reopen it without proof of the items, and that some one or more of them ought not to be allowed. It is not incumbent upon the other party to prove the items in his favor in such case.

11. INTEREST — PRESUMPTION. Where parties stipulated in a contract for the payment of ten per cent. interest, at the time the law allowed that rate of interest to be contracted for only for money loaned, without setting forth in the contract what the consideration was, the presumption is, in the absence of proof to the contrary, that the consideration was borrowed money. Violations of the law are not to be presumed.

12. Interest *upon an account stated — at what rate allowed.* But settling and stating an account between the parties, in reference to such indebtedness, changes its character, so that while a portion of the indebtedness which was the subject matter of such settlement may be presumed to have properly borne interest at ten per cent. before that time; the balance due on the account stated would bear interest only at the rate of six per cent., in the absence of any agreement, expressed or implied, to pay a different rate.

13. The payment of conventional interest will not be required where it is not stipulated for, or where the stipulation cannot be enforced as made.

14. Usury — *no forfeiture in equity.* A mortgagor seeking to redeem cannot insist upon a forfeiture of all interest because usury has been agreed upon or reserved. Equity would compel him to pay six per cent. interest, though it was established that twelve per cent. was agreed upon.

15. Presumptions of fact — *how they arise.* Presumptions of fact are conclusions drawn from particular circumstances. They are such as are found by experience to be usually consequent upon, or coincident with the facts presumed, and either do not arise, or are rebutted. if they do not correspond with, or are not adequate to account for, the circumstances actually proved.

16. Presumption of payment *of a note found in the hands of the maker.* Ordinarily, a note found in the hands of the maker, will, from that circumstance, be presumed to have been paid, for the reason that the surrender of a note to the maker, is usually consequent upon, or coincident with, its payment; but if other circumstances are proved which are inconsistent with that hypothesis, the presumption is at once rebutted.

Appeal from the Circuit Court of La Salle county; the Hon. Madison E. Hollister, Judge, presiding.

This was a suit in chancery instituted in the court below by Charles H. Sutphen against William H. W. Cushman, by which the complainant seeks to redeem from an alleged mortgage, executed by him to the defendant in the form of a deed, purporting to convey an absolute estate.

The court below decreed the conveyance to be a mortgage, and that the complainant be allowed to redeem upon paying to the defendant the sum of $4,179.18. The complainant brings the case to this court for review, alleging the amount found to be due to the defendant is too large. The defendant assigns cross-errors, insisting the transaction was not a mortgage, but a conditional sale; and this is the principal question presented upon the record. The circumstances connected with

the transaction, so far as they control the operation of the conveyance in that regard, are sufficiently set forth in the opinion of the court. A large portion of a voluminous record is occupied with a statement of the account between the parties, and the testimony in relation thereto, which it would serve no valuable purpose to set forth in these reports.

Messrs. GRAY, AVERY & BUSHNELL and LELAND & BLANCHARD, for the appellant, contended that a court of equity would discover a mortgage through all its disguises; and that the power of insisting upon that as a sale which was really a mortgage, cannot be successfully practiced under the shield of any written papers, however precise and complete they may appear to be. That in equity there can be no estoppel in such cases to obstruct the inquiry into the real nature of the transaction. Citing *Wyncoop* v. *Corning*, 21 Ill. 570; 2 Story's Eq. Jur. §§ 1018, 1019; *Russell* v. *Southard*, 12 How. U. S. 147.

Messrs. GLOVER, COOK & CAMPBELL, for the appellee, contended that the transaction was not a mortgage, but a conditional sale, and presented the following points and authorities:

In order to show by parol that a deed, absolute upon its face, should be construed as a mortgage, it should appear,

1st. That it was given to *secure the payment* of a debt or a loan of money.

2d. That the consideration is inadequate for the value of the land.

3d. That there was a legal liability on the part of the grantor, so that the grantee could collect the debt secured.

4th. That the previous and subsequent acts of the parties can only be explained by construing the deed as a security.

The distinguishing characteristics of a conditional sale are:

1st. The consideration for the deed is the full value of the land.

2d. That there is only an offer on the part of grantee to resell, without any agreement by grantor to repurchase. So, that the rights of grantor and grantee are not mutual and reciprocal.

3d. That a considerable length of time, after the making of the deed, has passed without any offer on the part of the grantor to redeem, or of any claim of the right to redeem.

4th. That the contemporaneous and subsequent acts of the parties are such as can only be explained by the fact of a conditional sale.

The transaction in this case is a conditional sale and not a mortgage. 1 Hilliard on Mortgages, 63, *et seq.; Conway's Ex'rs* v. *Alexander,* 7 Cranch, 237; *Floyer* v. *Livingston,* 1 P. Wms. 272; *Chapman's Adm'rs* v. *Turner,* 1 Cal. 251; *Poindexter* v. *McCannon,* 1 Dev. Eq. 380; *Robinson* v. *Cropsey,* 2 Edw. 143; *Chambers* v. *Hise,* 2 Dev. & Bat. 305; *Glover* v. *Payne,* 19 Wend. 520; *Goodman* v. *Grierson,* 2 Ball & B. 274; *Verner* v. *Wistanley,* 2 Sco. & Lef. 393; *Barrall* v. *Sabin,* 1 Verm. 268; *Hossack* v. *Rogers,* 8 Paige Ch. 254; *Davis* v. *Thomas,* 1 Russ. & Myl. 513; *Town of R.* v. *Town of W.,* 7 Conn. 143; *Brown* v. *Dewey,* 2 Barb. S. C. 28; *Holmes* v. *Grant,* 8 Paige, 243.

The complainant is estopped from insisting that the deed in this case is really a mortgage:

1st. By the execution of the lease under which he covenanted to occupy as a tenant of defendant. *Ingraham* v. *Baldwin,* 5 Seld. 45; *Tilghman* v. *Little,* 13 Ill. 241.

2d. By the execution of the three chattel mortgages to secure the rent, being solemnly executed under seal.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

The appellant seeks by a bill in equity to redeem from an alleged mortgage executed by him to the appellee on the 19th day of February, 1856. A deed of that date was executed by him to the appellee conveying several tracts of land in La Salle county, containing three hundred and forty-five acres which, in form, was an absolute conveyance but which he insists was intended as a security for existing and future indebtedness. On the 8th day of December, 1856, and on the 3d day of January, 1857, the appellee reconveyed to the appellant, two

hundred and twenty-nine $\frac{39}{100}$ acres of the land; seventy and $\frac{69}{100}$ of which were sold to Aaron C. Badgley; and one hundred and fifty-eight and $\frac{70}{100}$ to John R. Snyder. The remainder of the premises was the homestead of the appellant, upon which he then resided and still resides; and to redeem which the suit is brought. At the time the deed first mentioned was made, the appellant was indebted to the appellee upon a bond dated the 1st day of November, 1852, conditioned for the payment of $1,771.85 with interest payable annually, which indebtedness was secured by a deed of trust of the latter date to Samuel B. Gridley of the premises first mentioned. The first years interest upon this indebtedness had been paid. The appellant was at that time also indebted to the appellee upon a promissory note for the sum of $1,400, which fell due the 1st day of November, 1853, and was secured by a deed of trust of the same premises to Samuel B. Gridley, dated the 1st day of May, 1853. Upon the indebtedness last mentioned the sum of $100 was paid the 25th day of August, 1853, and the further sum of $200 on the 4th day of October, 1853. A computation of the amount due upon the bond and note on the 19th of February, 1856, shows it to have been $3,705.45 at that time. On the 27th of October, 1854, the appellee received from the appellant, as collateral security for the payment of the indebtedness, two notes against one Lighthall, dated the 1st day of September, 1854, for the sum of $250 each, payable the 1st day of June, 1854, with interest at the rate of ten per cent. *per annum;* upon one of which the sum of $175 was indorsed on the day of its date.

On the 12th day of June, 1855, the appellee received from the appellant, as collateral security for the payment of the indebtedness, another note against Lighthall, dated the 1st day of September, 1854, for the sum of $500, and payable the 1st day of September, 1855, with interest at the rate of ten per cent. *per annum.* Some small sums of money were collected on these notes by the appellee prior to the 19th of February, 1856, and much more after that time. It is not important for our present purpose to ascertain the precise times when these

collections were made, inasmuch as none of them were accounted for by the appellee until long after the deed in question was executed. On the 19th of February, 1856, a settlement was made by the parties, and it was then agreed between them, that there was due from the appellant to the appellee the sum of $4,101.20. It appears that the sums due upon the appellant's bond and note constituted two items of the account settled on that occasion, but there is no evidence of what items the residue consisted. It has been suggested that the residue of the account was usury, but there is no evidence which enables us to arrive at that conclusion. The evidence establishes various other facts and circumstances under which the deed in question was executed. Some of them deserve espécial notice.

It appears that on or about the 7th day of June, 1853, the appellant purchased of John T. Cook, several tracts of land for the sum of $4,100.82, payable on the 1st day of November, 1853, with interest at ten per cent. *per annum* after the 1st day of May, 1853. The whole, or the greater part of these lands were afterwards sold by the appellant to Philander Shaw. On the 7th day of June, 1853, the appellant executed a written agreement to the appellee, to pay him as Cook's agent, the purchase-money for these lands, and secured the payment of the same by the deed of trust to Samuel B. Gridley, given to secure the payment of the appellant's note for fourteen hundred dollars. To enable the appellee to convey the lands to the appellant when the purchase-money should be paid, Cook conveyed the lands to the appellee, and he, on the 25th day of June, 1854, conveyed the same to the appellant, who conveyed the whole or a part of them to Shaw. On the 4th day of February, 1854, the appellant paid to the appellee as Cook's agent, the sum of $500, and on the 1st day of March, 1854, the further sum of $3,571, leaving a balance unpaid of $420.60, apparently due when the deed in question was executed. There is, however, no evidence that this balance was included in the settlement made by the parties at that time.

The appellant was indebted to George S. Fisher in the sum

of $736, for which he had obtained a judgment; and was also indebted to Jacob V. B. Graham in the sum of $1,012, secured by a mortgage upon the premises before described. These are the principal circumstances under which the settlement was made and the deed in question executed. The appellee, on that occasion, agreed to pay the debts due to Fisher and Graham, and executed to the appellant his six promissory notes for the sum of $7,950. In determining whether the transaction consummated by the deed in question was an absolute sale, or should be regarded merely as a mortgage, we entirely disregard the testimony of those witnesses introduced for the purpose of establishing their understanding of the nature of the transaction, and who relate conversations of the parties. The conveyance purports to convey an absolute estate to the grantee, and it must be taken as the exponent of the rights of the parties, unless some equity is shown, not founded on the mere allegation of a contemporaneous understanding inconsistent with the terms of the deed, but independently both of the deed itself and of the understanding with which it was executed. The right to redeem lands so conveyed cannot be established by simply proving that such was the understanding on which the deed was executed, because equity as well as the law, will seek for the understanding of the parties in the deed itself. The right must be one paramount to, and independent of, the terms of the deed, as well as of any understanding between the parties at the time it was executed. Parol evidence is admissible so far as it conduces to show the relations between the parties, or to show any other fact or circumstance of a nature to control the deed and to establish such an equity as would give a right of redemption, and no further. In the application of this rule, parol evidence is received to establish the fact that a debt existed, or money loaned on account of which the conveyance was made; for such facts will, in a court of equity, control the operation of the deed. So, too, in regard to any other fact or circumstance having the same operation. 3 Lead. Cas. Eq. 628, and cases cited. From some expressions of opinion in

cases hitherto decided by this court, it has been supposed that a more enlarged rule has been adopted in this State, but a careful examination of them will show that this court has never departed from the rule we now enunciate. In examining our reported cases, it should be remembered that the manner in which testimony has been taken in chancery causes, has often introduced into records brought to this court testimony that was irrelevant and inadmissible, some of which has been reported inadvertently, and care should be taken to ascertain the precise question presented for the consideration of the court as well as its decision thereon. While irrelevant and inadmissible testimony thus brought before the court is disregarded, it would serve no purpose worth the while for us to point it out in detail on every such occasion, and, ordinarily, we have not done so.

In *Delahay* v. *McConnel*, 4 Scam. 157, a grantee had executed a bond, stating that the deed to him though absolute in its terms, was intended only as a mortgage, and conditioned for the reconveyance of the premises upon payment of the indebtedness which the deed was intended to secure. The only question before the court was, whether the intention of the parties might be manifested by a written defeasance executed simultaneously with the conveyance. In *Ferguson* v. *Sutphen*, 3 Gilm. 547, the question arose in regard to lands purchased at a government land sale. Parol evidence was received to establish the fact, that an arrangement was made before the sale, between the occupant of the lands and the purchaser, by the terms of which he was to make the purchase and convey the lands to the occupant upon payment of the sum paid to the government with a stipulated advance thereon. From the nature of the arrangement and the circumstances under which it was made, it was evident that the transaction was one for the loan of money with security for its repayment. In *Coates* v. *Woodworth*, 13 Ill. 654, Woodworth was indebted to Tarbox for which he held Woodworth's lands as security. Coates agreed to loan Woodworth money to pay the debt, and to take a conveyance from Tarbox as security for the money

thus loaned. The loan was made and the money so borrowed was paid to Tarbox as the consideration of the conveyance from him to Coates, and these facts were held to create a resulting trust in favor of Woodworth. In *Miller* v. *Thomas*, 14 Ill. 428, the grantee had entered into a written agreement with his grantor to reconvey the premises upon the payment of a certain sum by a certain day, and it contained a covenant by the grantor to pay the money by that time. The question presented was, whether the connection of this instrument with the deed might be shown by parol. The court say "that it was not "absolutely necessary that a defeasance should be in writing. "That a conveyance might be absolute on its face, and yet it "might be shown by parol that it was intended only as a "security for the payment of money, when it would be treated "in equity as a mortgage." This language is strictly accurate and entirely coincides with the rule that the intention must be gathered from facts and circumstances thus proven, and not from loose declarations of the parties made at the time when the conveyance was executed in regard to their intentions. In *Davis* v. *Hopkins*, 15 Ill. 520 ; *Smith* v. *Sackett*, 15 id. 530 ; *Williams* v. *Bishop*, 15 id. 555 ; *S. C.*, 18 id. 101, and in *Wynkoop* v. *Cowing*, 21 id. 570, the question was, whether in fact there was a loan of money, and parol evidence was received for the purpose of establishing that fact, and when so established, equity regarded the transaction as a security for the repayment of the money loaned. In *Tillson* v. *Moulton*, 23 Ill. 648, Tillson, Senr., had borrowed a large sum of money of Clark, which was evidenced by certain notes and drafts. Tillson, Junr., had executed an absolute conveyance of lands to secure the payment of this indebtedness. Moulton took an assignment from Clark of the notes and drafts and a deed of the lands. The question presented was, whether these facts established a mortgage without the production of an original defeasance executed by Clark. In *De Wolf* v. *Strader*, 26 Ill. 225, and in *Shaver* v. *Woodward*, 28 id. 277, parol evidence was received to establish an existing debt, on account of which the conveyance was made. In *Brown* v. *Gaffney*, 28 Ill. 149,

evidence of oppression and undue advantage was allowed. In *Maxfield* v. *Patchen*, 29 Ill. 39, the secret understanding of the parties attempted to be proven, was held to have been rescinded and abandoned if it ever existed. Cases too numerous to cite are to be found in which courts have held that conveyances, absolute in form, should be regarded as mortgages in case they were executed to secure an existing debt or a loan of money; or were procured by fraud, undue advantage or oppression; or were made as a cloak to cover up usurious transactions; or where other equitable circumstances required that the deed should be so regarded; but in our researches we have been unable to find any well considered case in which it has been held that an absolute deed should be regarded as a mortgage, from loose declarations of parties made at the time it was executed, touching their intentions or understanding. As pilots of the ship of justice, we think that to guide her course by the headlands of the law, and when these are not visible, then by known rules adopted from the experience of ages, is safer than to turn her adrift amidst the treacherous waves of loose conversation, to be guided only by the imperfect understanding, recollection and statements of witnesses. Her cargo of cases may be lighter when she is guided by the safer rule, but she will be less likely to destroy whatever she comes in contact with by the misapprehension of the pilots on board.

We are of the opinion that the deed of the 19th of February, 1856, should be regarded as a mortgage from facts in relation to which there is no controversy. The appellant was indebted to the appellee at the time the conveyance was made, and there is no evidence whatever of the discharge of that indebtedness. The bond and note by which the greater portion of it was evidenced were retained by the appellee, as well as the Lighthall notes which had been pledged as security; and the payment of the indebtedness might have been enforced at any time thereafter. Until the contrary is shown, the presumption is that the indebtedness was not satisfied by the conveyance; and absolute certainty in regard to the fact takes the place of presumption in case the creditor retains the evidences of the

indebtedness, the securities pledged for its payment, and collects the money due upon such securities. We have not considered whether the transaction was a profitable one for the appellee or such as a business man would be likely to make. It is sufficient for us to know that when he took the conveyance on account of a preëxisting indebtedness without in any manner canceling or discharging it, that equity will regard the deed as a mortgage whether he so regarded it or not. He cannot hold the land absolutely, and at the same time retain the right to enforce the payment of the debt, on account of which it was made, and hold proceeds of collaterals pledged to secure its payment. As the deed must be regarded as a mortgage in respect to the indebtedness at the time it was made, it must be regarded in the same manner as to subsequent advances. We have not deemed it necessary to consider, at length, the argument that the appellant is, by the recitals in leases and other instruments executed since the deed was made, estopped from asserting the deed to be a mortgage, as equity will relieve him from any estoppel created by such instruments as well as from the estoppel created by the deed itself. An estoppel is created by the deed, and relief from it is granted because an equity is shown which requires it to be done. The same equity requires relief from the technical effect of all subsequent instruments. It only remains for us to state the rules by which the master will be governed in stating an account between the parties. The master should assume $4,101.20 due to the appellee on the 19th day of February, 1856, upon an account settled and stated. It is not incumbent upon the appellee to prove the items of the account. 2 Greenl. Evid. 129. The appellant, having stated the account and admitted it to be correct, cannot reopen it without proof of the items, and that some one or more of them ought not to have been allowed. *Darthery* or *Darthez* v. *Lee*, 2 Y. and Coll. 5; *Donegal* v. *Grattan*, 8 Bligh. N. S. 831.

The appellant alleges, that two items constituting a part of the account are erroneous. He claims that he was charged in the settlement with interest upon the bond, dated the first day of November, 1851, and upon the note falling due the 1st

day of November, 1853, at the rate of ten per cent. *per annum*, while the law allowed the appellee interest only at the rate of six per cent. *per annum*. The law in force when the bond was given, allowed parties to stipulate for interest at the rate of ten per cent. for money loaned; and until·the contrary is shown, the presumption is that the indebtedness was on that account. Violations of the law are not to be·presumed. So, in regard to interest upon the note. If the appellee advanced the amount of the note to Cushman & Co., he might lawfully stipulate for ten per cent. interest on such advance. The burden of proof in this regard is upon the appellant, and he has not shown the stipulation in regard to interest to be illegal. There is no evidence of what the residue of the account consisted, and in the absence of allegations and evidence in regard to it, the presumption is that it was made up of legal and proper items. Under such circumstances, we cannot presume that usury or any other illegal item was allowed as a ·part of the account. A balance of four hundred and twenty dollars and sixty-one cents appears to have been due John T. Cook for lands purchased of him at the time the above settlement was made. There is no evidence that it was included in the settlement, and the presumption is that it was not so included. It was a debt to Cook and not to the appellee, while the accounting was *prima facie* concerning matters solely between the parties themselves. From the fact that the sum apparently due to Cook so nearly corresponds with the unexplained sum making up the balance found due on the settlement between the parties, it has been supposed that the sum really due to him was included therein, and that the appellee had paid or assumed to pay the same. There is, however, no evidence that the claim was adjusted· in that manner. From the evidence before us, we are satisfied that the claim of Cook, if it was not included in the settlement, is not now an outstanding one against the appellant. The appellee asserts that he had no interest in the claim, and that his connection with it was solely that of an agent. He says that the moneys paid to him upon it were received by him in that capacity and paid over to his principal,

and "that the final settlement between the appellant and Cook was made between them personally and not by himself." The lands purchased of Cook were to be conveyed when the purchase-money was paid. The conveyance was made on the 21st June, 1854, more than a year before the settlement between the parties. At a subsequent accounting between the parties on 11th day of November, 1856, no claim was made in regard to the transaction, and none has been asserted for nearly ten years. We are of the opinion that the claim was satisfied in some manner, and if not included in the settlement made on the 19th of February, 1856, that it has been satisfied in some other way. The settling and stating of an account between the parties changed the character of the indebtedness. 2 Greenl. Evid. 128. While a portion of it may be presumed to have borne interest at the rate of ten per cent. before that time, the balance due on the account stated would bear interest at the rate of six per cent., in the absence of any agreement expressed or implied to pay a different rate. It is not necessary to consider whether the evidence establishes an agreement to pay twelve per cent. interest on the balance of the account, as equity would require the appellant to pay interest at the rate of six per cent. if it were established. A mortgagor seeking to redeem, cannot insist upon a forfeiture of all interest because usury has been agreed upon or reserved. The appellant would be required to pay the same rate of interest whether the agreement is established or not. There is no evidence of an agreement to pay interest at the rate of ten per cent. upon the balance of the account, and we cannot require the payment of conventional interest where it is not stipulated for, or where the stipulation cannot be enforced as it was made. The master will compute interest at the rate of six per cent. per annum on the sum due to the appellee when the settlement was made, and upon all subsequent payments and disbursements made by him from and after the time they were respectively made ; and will apply all moneys received by him towards the payment of the mortgage debt at the times when they were respectively received. At a settlement made between the parties on the

11th day of November, 1856, the sum of $4,180 was found due to the appellant for advances, &c., made after the mortgage was executed. The appellant on that occasion surrendered to the appellee all of his notes except one for a thousand dollars, which before that time had been sold to Eames, and received a certificate of deposit for $2,770. The sole consideration for the surrender of notes for $6,950, was an advance to the appellant of two thousand dollars in money, the satisfaction of the appellee's claims for moneys before that time paid to the appellant's creditors, amounting to $1,727 and the certificate of deposit. The appellee admits that he reserved $453, by way of discount for making these advances, and it is evident that he charged a liberal interest upon the moneys advanced to pay the appellant's creditors in addition thereto. He furnishes vouchers for $1,396.36, and asks an allowance for $330.64, more than that sum for interest and items which he does not recollect. This settlement is palpably erroneous, and whether so from fraud or from an undue advantage taken, the errors affect all the items of the account excepting that of two thousand dollars, and it cannot be set right by a decree to surcharge and falsify. A settlement under such circumstances should be entirely disregarded. *Coleman* v. *Mellerish*, 2. Macn. & G. 309.

The evidence establishes that the appellee paid for the appellant after the execution of the mortgage and prior to the 11th November, 1856, the following sums of money: March 18th, 1856, on the Fisher judgment, $750; March 20th, 1856, on Reisig notes, $428.50; March 26th, 1856, on the Gurley note, $820; March 26th, 1856, on Coe's note, $131.69; November 1st, 1856, check to Eames, $2,000, and to Cogswell & Co., $16.17, and he will be allowed these sums and such other items as he can establish before the master.

The evidence also establishes that the appellee paid, on the 19th February, 1857, $1,060 to take up his note before that time sold to Eames, and he will be allowed the sum so paid. The certificate of deposit for $2,770, represented an indebtedness of the appellee, and he claims that the court should presume that he has paid it, from the fact that it has been

surrendered to him. Presumptions of fact are conclusions drawn from particular circumstances. They are such as are formed by experience to be usually consequent upon or coincident with the facts presumed, and either do not arise, or are rebutted, if they do not correspond with, or are not adequate to account for the circumstances actually proved. Ordinarily, a note found in the hands of the maker will, from that circumstance, be presumed to have been paid, for the reason that the surrender of a note to the maker is usually consequent upon, or coincident with its payment; but if other circumstances are proved which are inconsistent with that hypothesis, the presumption is at once rebutted. The certificate was surrendered the 28th of January, 1858, upon the occasion of the appellant's taking a lease of his homestead for another year, and executing to the appellee a chattel mortgage, covering the appellant's entire personal property, to secure the payment of rent.

The appellant's other creditors were pressing him for payment. The appellee had become security for him upon the debts to Graham and Swift, and on that occasion became security for him upon a note to Thompson. One thousand dollars of the consideration for its surrender, it is admitted, was not paid, but was indorsed upon the appellant's note of $2,000, given for rent of the premises for previous years. No money was paid to the appellant at that time. The appellee does not assert that he has ever paid the balance due thereon, but says that he applied the value of the remainder of the certificate upon the appellant's indebtedness to him. We have but little information concerning the items of such indebtedness, and still less of its amount, and none whatever of the rule of discount by which the value of the certificate was ascertained. These are some of the circumstances under which the certificate was surrendered, and we are of the opinion that they are sufficient to rebut any presumption of payment. We do the appellee no injustice by declining to presume a fact which he, under the circumstances, is unwilling to assert. There is no objection to a party purchasing his own obligations at any price the holder and himself can agree upon,

if such obligations represent a *bona fide* indebtedness, and are not issued and purchased back as a means of covering up an usurious transaction.

Regarding, as we do, the deed to be a mortgage, the notes of the appellee in the appellant's hands were not an indebtedness; and it would be a mockery of justice to allow a creditor to loan or to execute to an oppressed debtor, promissory notes or unassignable certificates of deposit having many years to run — then purchase them back for ready money at their value according to a broker's rule of discount — and then assert a claim for advances for the sum appearing to be due upon their face. No artful contrivances are allowed, to cover up an usurious transaction. The appellee should be reimbursed such sums of money as he has actually advanced and no more. The evidence establishes that the appellee paid for the appellant January 27th, 1859, on note to Thompson $692.84 — February 15th, 1860, for taxes $35.10 — also for taxes 70 cents — for insurance for years 1860 and 1861 $28.10, and the amount of a note of the appellants for $84.80. These sums will be allowed to the appellee, together with such others as he can establish before the master. The order of reference to him will contain the usual direction for the examination of the parties upon interrogatories. 2 Daniels Ch. Pr. 1366. As an officer of court, the master has, in his discretion, full power to examine the parties upon oath for his own information. He acts under the direction of the court that appoints him and it has power to direct, as well as to revise his action. We are of the opinion that the court below should in this case, direct the master as to the manner of discharging his duties, and the order of reference will contain a special direction to examine the parties upon oath, touching all moneys received by the appellee from or on account of the appellant, or paid to or for him at his request since the 19th day of February, 1856. The notes of the appellant given for rent and all instruments executed to secure their payment should be directed to be surrendered and canceled.

It is admitted that the appellee received April 2d, 1856,

$105; January 7th, 1857, $1,000; February 10th, 1857, $831; December 10th, 1857, $1,433.19; July 3d, 1858, $952.82; December 10th, 1858, $1,563.43; July 3d, 1859, $1,038.93; December 10th, 1859, $1,693.77 and July 3d, 1860, $1,122.05. These sums will be applied in extinguishment of the mortgage debt. The appellee should also be required to account for whatever he has collected upon the Lighthall notes, deducting the costs and expenses of collection. The sums of money thus received should be applied as other moneys coming into the hands of the appellee.

It appears that the appellee received on these notes October 9th, 1856, $240.25, and at various other times the sums of $55, $66, $125, $23 and about $174; in all about $683.25. The evidence does not show the precise times when these payments were received, nor does it satisfactorily appear that they were all that were received. The appellee admits that he received $240.25 on the 9th day of October, 1856, and the sum of $454.77 on the 2d day of November, 1858, over and above the costs and expenses of collection, and it does not satisfactorily appear that he received any more. The judgment in the suit upon the two smaller notes was for the sum of $39, which would be about the sum due thereon deducting the $55, $66 and the $185, paid to the appellant. The judgment in the suit upon the larger note was for about $135, which would be about the sum due thereon deducting the $240.25, $125 and $23. It is evident that the appellee failed to recover judgment for the $185, paid to the appellant. The sums which the appellee admits that he received are larger than are shown by any other evidence to have come into his hands, and if no further evidence as to this item is introduced before the master, the appellee should account for the sums so admitted to have been received and no more. The appellant claims that the appellee should account for extra interest received upon the Badgley and Snyder notes. These notes were not payable with interest, but after a portion of them fell due the appellant received fifteen per cent. interest thereon until they were fully paid.

We are of the opinion that the appellee made the notes his own from and after the time they respectively fell due, and that he should account for the sums due upon them at those times. The risk of loss in consequence of the extension of the time of payment was borne by the appellee and he ought to receive the benefits therefrom. The decree of the court below is reversed and the cause remanded, for further proceedings not inconsistent herewith.

*Decree reversed.*