## Jetta May v. Matilda May.

1. CONTRACT—*In Consideration of Marriage.*—Marriage is a good consideration for a contract.

2. EVIDENCE—*To Convert a Deed into a Mortgage.*—The evidence required to convert a deed, absolute upon its face, into a mortgage, must be clear and decisive.

**Memorandum.**—In chancery. Appeal from the Superior Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Bill to have a deed absolute, declared a mortgage; decree for complainant; appeal by defendant. Heard in this court at the October term, 1894. Reversed and bill dismissed. Opinion filed December 6, 1894.

### STATEMENT OF THE CASE.

This was a proceeding in equity to set aside an absolute deed and have the same declared to be but a mortgage.

The circumstances, about which there is no controversy, under which the deed was made, were in part as follows:

The claim of the appellee is that the quit-claim deed referred to was executed for the purpose of securing appellant for the advancement of certain moneys to redeem the premises from a prior foreclosure sale. The appellant claims that the quit-claim deed to her was an absolute conveyance of the property in consideration of her agreement to marry Louis May, the son of the appellee, and subsequent fulfillment of such agreement by actual marriage.

On May 2, 1891, Matilda May, the appellee in this court and complainant in the court below, was the owner in fee simple of the following described real estate, situated in the city of Chicago, county of Cook and State of Illinois, to wit:

Lots ten (10) and twelve (12), in O. M. Wells' subdivision of lots twenty-six (26) to thirty-eight (38), both inclusive, in Rice and Valentines' subdivision of lots eleven (11) to twenty (20), both inclusive, in Dobbins' subdivision of the N. half of the S. E. ¼ of the N. E. ¼ of section three (3), T. 38 N., R. 14 east, said premises being further known as Nos. 373 and 377, 42d street, in the city of Chicago. Upon each of these lots was erected a two-story dwelling house. At that time each place was subject to a first mortgage for $3,250, and a second purchase money mortgage for $600.

Previous to May 2, 1891, foreclosure suits had been commenced to foreclose the second mortgage upon each of the lots, which foreclosure suits resulted in a master's sale on June 11, 1891, of each of the places to Daniel H. Tolman, to whom a master's certificate of sale was issued on each lot, the purchaser or his assignee being entitled to receive a master's deed on September 12, 1892, unless previously redeemed. During all the time of these foreclosure proceedings, one Louis May, age about thirty-four, the son of Matilda May, the appellee, was "keeping company" with the appellant in this case, whose name was then Jetta Wachtel, and who was a widow.

On September 30, 1891, the appellee, Matilda May, and her husband, Joseph May, went to the office of Aschraft & Gordon, attorneys in the city of Chicago, and there signed and acknowledged a quit-claim deed of the premises above described to the appellant, Jetta Wachtel, and on the day following, October 1, 1891, the quit-claim deed was delivered to the appellant, and afterward on the same day, she and Louis May were married, and on the day following that, October 2, 1891, the quit-claim deed was filed for record in the recorder's office.

Immediately following the marriage and delivery of the deed, the possession of both the houses in question was turned over to the appellant, Jetta May, and she and her husband, Louis May, commenced to live in one of the houses and to receive the rents from the other, and they continued so to do up to the time of the hearing of this case.

On February 2, 1892, each of the lots in question was redeemed from the master's sale made under the second mortgage, in the name of and for Jetta May, the appellant, as stated in the certificate of redemption, and the money for such redemption, $1,640, was furnished by the appellant, Jetta May. On September 6, 1892, the first mortgage of $3,250 on each of the lots came due, and new notes and mortgages for the same amounts were executed by the appellant, Jetta May, for the purpose of taking up the old mortgages and renewing the loans.

On March 3, 1893, the appellee, Matilda May, filed her bill of complaint herein, seeking to set aside the quit-claim deed made by her to appellant, so far as the same appeared to be an absolute deed of conveyance, and to have the same declared to be a mortgage.

The court below found the issues for the complainant, and entered a decree declaring that the quit-claim deed above referred to was not intended as an absolute conveyance of the premises, and that the complainant below was entitled to have the premises reconveyed to her by the defendants below, Jetta and Louis May.

The complainant insists that she conveyed these premises upon an understanding with the defendant, Jetta May, then Jetta Wachtel, that the latter should redeem the same from the sale upon the second mortgage, pay off the first mortgage, and when she got her money back would reconvey the premises to the complainant.

The defendant, then Jetta Wachtel, now Jetta May, denies that there was any understanding that she would ever, under any circumstances, reconvey the premises, and says that they were given and conveyed to her in consideration of marriage.

The property consisted of two houses. A witness for the complainant testifies that these houses were, September 30, 1891, worth $7,000 to $7,500 each. A witness for the defendant testifies that they were worth in October, 1891, $6,000 each. The two are charged in the bill to have been worth $13,000.

APPELLANT'S BRIEF, MANN, HAYES & MILLER, ATTORNEYS;
JAMES R. MANN, OF COUNSEL.

A deed absolute upon its face is presumed to be what it purports to be, an absolute conveyance, and evidence to overcome this presumption of the law must be clear, satisfactory and convincing.    Loose and indefinite evidence will not suffice.

In Sharp v. Smitherman, 85 Ill. 154, the Supreme Court say :

"The statute declares that 'every deed conveying real estate which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage.' It has, however, been held repeatedly by this court that a deed absolute upon its face is not to be considered as a 'mortgage' unless it be made to appear clearly to have been so intended at the time of its execution."

In Remington v. Campbell, 60 Ill. 516, it was said :    "It is well settled when parties give to a transaction all the forms of a sale, the proof must be clear it was intended as a mortgage in order to change its character.    Slight evidence is not sufficient."

In Bentley v. O'Bryan, 111 Ill. 53, page 61, it was said : "Where a deed for land on its face appears to be an absolute and unconditional conveyance, and is acknowledged and delivered, the law will presume, in the absence of proof to the contrary, that it is what it purports to be, an absolute conveyance.    Where a warranty deed for land, absolute in form, is claimed to be a mortgage only, the party alleging such a character must sustain his claim by evidence sufficiently clear and satisfactory to overcome this presumption of the law.    Loose, indefinite and unsatisfactory evidence will never suffice."

And in Helms v. Boyd, 124 Ill. 370, the court again said : "A deed absolute on its face may be shown by parol to be a mortgage.    The law will, however, presume, in the absence of proof to the contrary, that such a deed is what it purports to be, an absolute conveyance.    The party who claims an

absolute deed to be a mortgage, must sustain his claim by proof sufficient to overcome this presumption of the law. Before a deed absolute in form will be held to be a mortgage, the evidence must be clear, satisfactory and convincing. It must be made to appear clearly that such a conveyance was intended as a mortgage at the time of its execution. The question is one of intention, to be ascertained from all the circumstances."

A promise to marry, afterward fulfilled by marriage itself, is a good and valuable consideration, and sufficient to sustain a conveyance made on the strength of such promise both in law and equity. Otis, Receiver, v. Spencer, 102 Ill. 632; Rockafellow v. Newcomb, 57 Ill. 186; Bunnel et al. v. Witherow, 29 Ind. 123; Thompson v. Thompson, 17 Ohio State 649; Bouser v. Miller, 5 Oregon 110.

BLUM & BLUM, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

While the interest of the complainant in the property was, when she conveyed the same to appellant, one which probably could have been sold for some money, it is manifest that, as a pure matter of business, no person would then loan to the complainant anything upon the security of these houses.

That marriage is a good consideration, is undisputed.

The principal question of law involved in this case is, what kind and amount of evidence is required to convert a deed, absolute upon its face, into a mortgage, a mere security.

That such evidence must be clear and decisive, and that loose, indefinite or inconclusive evidence is insufficient, is well established. Sutphen v. Cushman, 35 Ill. 186–193; Knowles v. Knowles, 86 Ill. 1; Wilson v. McDowell, 78 Ill. 517; Low v. Graff, 80 Ill. 360; Sharp v. Smitherman, 85 Ill. 154; Bently v. O'Bryan, 111 Ill. 53–61; Holmes v. Boyd, 124 Ill. 370.

In Sutphen v. Cushman, 35 Ill. 186, the court, speaking of a conveyance absolute upon its face, say:

" The right to redeem lands so conveyed can not be established by simply proving that such was the understanding on which the deed was executed, because equity as well as the law will seek for the understanding of the parties in the deed itself. The right must be one paramount to, and independent of, the terms of the deed, as well as of any understanding between the parties at the time it was executed."

The evidence in the present case, given on behalf of the complainant, that the quit-claim deed given to Jetta May, was received by her as well as given by the complainant as a mortgage only, a mere security for money that she might thereafter advance, is far from being clear or decisive.

The testimony of complainant and her husband is almost entirely concerning conversations had with their son, Louis May, before his marriage to Jetta Wachtel, without any showing that he was, and in the face of positive testimony that he was not, her agent, or authorized in any way to speak for her; indeed, his statement as given by these witnesses does not purport to be authorized by or on her behalf, but rather as holding out of what he wished and would do.

Joseph May, the husband of the complainant, testifies to conversation with the defendant, Jetta May, in which he testifies she said that she did not want the property and that it should go back to the complainant after she, Jetta, got her money out.

He fixes no time when this conversation was had, but from all his testimony it is evident that if it occurred at all, it was after the deed was delivered and the marriage had taken place.

Other children of the complainant testify to conversations with Jetta May; these seem to have been had after the marriage, and are quite immaterial, save that claimed to have been had with H. D. Young, a son of the complainant. Mr. Young is a wholesale liquor dealer, and testifies that Jetta May, about Christmas, after the marriage, called at his store and told him that before she was married to Mr. Young's brother, Louis May, she promised to take the houses up, to secure them and collect the rents, and to get

the money in that way, and then transfer the houses back to the complainant.

Upon the part of the defendants, Mrs. Jetta May and her husband, Louis May, testify that no such conversations as are said to have been had with them, respectively, ever took place; that the deed was made in consideration of the marriage of Jetta Wachtel to Louis May; that the complainant before the marriage frequently expressed her willingness to convey these houses to Jetta Wachtel if she would marry Louis.

Newton F. Gordon, a disinterested witness, who drew the deed, and before whom it was acknowledged, testified that the complainant had frequently talked with him about the property during the summer of 1891, and while the foreclosure proceedings were going on; that prior to the time when the deed was signed she had on two or three occasions talked to him about deeding the property to Jetta Wachtel; that she had told him "that if Mrs. Wachtel would marry Louis she was willing to deed this property to her; that the time for redemption was fast running out and she had no money; she did not see how she was ever going to save the property." That she told him "distinctly that Mrs. Wachtel would not marry Louis without she got this property;" that when she first came into his office and told him "that if Mrs. Wachtel would marry Louis May, she would give to her this property," it was two to three months before the deed was made; that when this matter was first spoken of the title to the property stood in the name of complainant's son Sam; that she talked with him about getting the title from "Sam," so that she could deed it to Mrs. Wachtel; that he explained to her, particularly, that she was deeding to Mrs. Wachtel all the interest she had in the property, and advised her not to do it; that he was careful to explain the matter to her because she could not read or write; that some time after the deed was made she came in and told him that one of the tenants of the property had been garnisheed on a debt of hers, and that she then said, "of

course the property don't belong to me; I don't have any-thing to do with it; I don't collect the rents."

The testimony of Jetta May as to repeated promises by the complainant to give to her, Jetta, these houses if she would marry Louis, her hesitation about contracting such marriage and reasons therefor, that she would not have married him without she obtained this property, and why she would not, is clear and consistent.

Mrs. Brackett, a disinterested witness, testified that the complainant repeatedly told her that she, complainant, would give the two houses to Jetta if she would marry Louis. That in response to a suggestion that witness thought complainant's other sons might object to it, she said that Louis was her favorite son and she liked Mrs. Wachtel, and if " she would marry Louis she would give her these two houses."

W. H. Brackett, also a disinterested witness, testifies that the complainant told him that Louis and Jetta were engaged to be married, and when they were married she would give them two houses standing on 42d street side by side.

The deed was signed and acknowledged September 30th, and delivered the next morning; the marriage took place in the evening of the day of the delivery.

The complainant testifies that the day after the marriage her son Louis told her that she had got to get out, that his wife didn't want to live with " no mother-in-law;" that the first time she, complainant, had any talk with Jetta about taking up the indebtedness on the houses was after the marriage.

She insists that she was turned out of her house the day after the marriage, and of this she complains, and it would seem, if her story of her son's conduct is true, with reason. If she was turned out as she says, she then, October 2, 1891, had good evidence that Jetta May and her husband, Louis May, regarded the property as Jetta's, and that she, com-plainant, had no right therein; yet she waits until after, on February 2, 1892, the defendant had, by paying $1,640, redeemed the property from the foreclosure sale, and until

after Jetta May had paid and discharged the notes and mortgages made by complainant, by giving new notes and mortgages made by her, Jetta, on the 6th of September, 1892; finally, on the 5th of March, 1894, she files her bill to set aside the quit-claim deed made by her October 1, 1891.

Substantially all the material testimony from disinterested witnesses sustains the position of the defendants; the circumstances surrounding the transaction are in entire accord with such position, while the evidence for the complainant in no wise is equal to the requirement of the law.

An absolute conveyance can not be set aside and turned into a mere security for disbursements made after the deed was executed, upon evidence such as the complainant had produced in this case, when such evidence is overturned by so great a preponderance as here appears.

We are not unmindful that the chancellor, who sees and hears the witnesses, is better able to judge of their credibility than a reviewing court can be, but it is not in this case a matter of mere credibility of witnesses that is to be considered; it is rather the character—the substance of the testimony, be the witnesses ever so creditable; that character, that substance in this case, in the face of the undisputed facts, comes far short of being of that clear and convincing nature the law requires shall be produced ere an absolute conveyance is thereby pronounced to be but a mortgage.

The decree of the Superior Court is reversed and the bill here dismissed for want of equity.

Mr. Justice SHEPARD took no part in this case.