MARY MILLER, Plaintiff in Error, *vs.* LOUIS MANDEL, Admr., *et al.* Defendants in Error.

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

EVIDENCE—*clear proof is necessary where lost contract is relied upon to modify trust deed.* One who claims that a note and trust deed absolute upon their face were given merely as collateral security for the performance of a contemporaneous written contract, which has been lost, has the burden of establishing his contention, and his proof in that respect must be clear and convincing before a court will decline to enforce the note and trust deed according to their terms.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

F. J. GRIFFEN, (ALONZO M. GRIFFEN, of counsel,) for plaintiff in error.

ROSENTHAL & HAMILL, (LESSING ROSENTHAL, and LEO F. WORMSER, of counsel,) for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Branch "B" of the Appellate Court for the First District affirmed a decree of foreclosure entered by the circuit court of Cook county upon a cross-bill filed by Dorothea Klatt and dismissed the original bill filed by Mary Miller. The case is in this court by virtue of a *certiorari*.

The original bill was filed for the purpose of having a note for $1700 surrendered and a trust deed given to secure the same canceled as a cloud upon the title of plaintiff in error to certain real estate claimed by her as devisee under the last will of her former husband, Henry Mandel. Plaintiff in error contends that the trial court erred in dismissing the original bill and in granting the foreclosure upon the

cross-bill, and that the Appellate Court erred in affirming that decree.

The opinion of the Appellate Court contains an accurate statement of the allegations of the pleadings, which we adopt, as follows:

"The original bill of complaint, filed February 2, 1904, by appellant, states that the complainant is the owner of the real estate in question, containing 131 acres, more or less, and that she derived title to the land by the will of her former husband, Henry Mandel, which will was duly admitted to probate in the probate court of Cook county, Illinois, on September 7, 1900; that the said Henry Mandel went into possession of the land as owner on February 1, 1894, and continued in such possession until the time of his death, on March 24, 1900, at which time complainant went into possession thereof as owner and has ever since been in exclusive possession of all the land. The bill avers that Henry Mandel derived title to the land by warranty deed from his father, Christian Mandel, dated February 1, 1894, and duly recorded; that at the time of making the deed Christian Mandel was in feeble health and undertook to make a distribution and division of all his property among his children, and conveyed the land in question to Henry Mandel, his son. At the same time he conveyed his other lands to his other sons. At the time of the conveyance of the land to Henry Mandel for the purpose of making said distribution of the property of the said Christian Mandel among his children, Henry Mandel and his wife made their promissory note for $4500, due August 12, 1899, bearing interest at four per cent per annum, and to secure the same said Henry Mandel and his wife made a trust deed to Frederick Mandel, Sr., which note and trust deed were delivered to Theodore Mandel, a son of Christian Mandel, as his share of the property of his father, and Christian Mandel made a full distribution of his property among his children, giving each what said Christian Mandel deemed to be an

equal share thereof, and the children who received real estate as and for their share of the estate, namely, Henry Mandel, Louis Mandel, August Mandel and Christian Mandel, Jr., made, in consideration of the conveyance of land to them, an agreement with said Christian Mandel whereby each agreed to pay said Christian Mandel $100 per year during his life, and to secure the said payments the said Henry, Louis, August and Christian each executed and delivered to Christian Mandel their promissory note, dated February 1, 1894, for $1700, purporting to bear interest at the rate of six per cent, and secured by trust deeds to Frederick Mandel, Sr., to the lands respectively conveyed to them; that the notes and trust deeds were made solely and only as security for the payment of said annuity of $100 to Christian Mandel during his life. The bill avers that Christian Mandel died June 9, 1900, and that Henry Mandel paid to said Christian Mandel $100 per year during his life, with the possible exception of the year 1900,— the year in which both said Christian and Henry Mandel died; that the said annuity was paid for the year 1899 by board and care, and the annual payments for the previous years were by Christian Mandel endorsed on said note for $1700, as appears by a copy attached as 'Exhibit C' to the bill and made a part thereof. The bill tenders and brings into court $200 for any unpaid part of annuity found by the court. The bill prays that an account may be taken and that the trust deed to Frederick Mandel, Sr., may be declared a cloud on complainant's land and removed. The bill makes Louis Mandel, administrator of the estate of Christian Mandel, deceased, Louis Mandel and August Mandel, executors under the last will and testament of Theodore Mandel, deceased, Louis Mandel, August Mandel, Dorothea Klatt, Fred Mandel, Sr., trustee, and William Schultz, successor in trust, parties defendant. Louis Mandel, individually and as administrator, Dorothea Klatt and Fred Mandel, Sr., trustee, filed a joint and several answer

to the bill, admitting many facts stated in the bill as to the execution of the papers set forth therein, and denying the payment of the annuity of $100 per year during the life of Christian Mandel, as averred in the bill. The answer admits that the trustee has refused to release the trust deed for $1700 unless $1700 and interest thereon is fully paid, and that the administrator demands payment in full of the $1700 note and interest thereon. Defendant (appellee) Dorothea Klatt, on September 14, 1904, filed her cross-bill in the usual form for foreclosure of the $1700 note and the trust deed. To the cross-bill complainant answered, and the chief and only defense set up in the answer is the alleged agreement set up in her original bill of complaint, that the note and mortgage were given Christian Mandel, Sr., as security only for the payment by Henry Mandel to him of an annuity of $100 per year during his life. By an amendment to the original bill the allegations are changed so as to read that the note and trust deed were given as security for the payment of the $100 annuity only for ten years and not during the entire life of Christian Mandel, and that the arrangement was embodied in a contemporaneous written contract executed by Christian Mandel, Sr., and his children. The cause was put at issue, and on the trial the court entered a decree dismissing the complainant's bill and decreeing a foreclosure of the $1700 note and trust deed in favor of the cross-complainant, the chancellor finding that the material allegations of the bill were not supported and sustained by the evidence and proof, and that the $1700 trust deeds were given to secure indebtedness which had not been paid."

A few facts in addition to those recited in the foregoing statement will be sufficient to give a clear understanding of the question involved.

Christian Mandel was the owner of four farms, two of which were in Cook county and the others were in DuPage county. There were 580 acres of land in all of the farms,

worth in 1894 about $100 per acre. At that time Christian Mandel had five sons and one daughter. His sons were, August, Henry, Louis, Theodore and Christian Mandel, Jr. The daughter's name was Dorothea Klatt. On February 1, 1894, Christian Mandel determined to make a distribution of his property among his children. To accomplish this purpose he divided his farm lands among four of his sons. The 131 acres in controversy were conveyed to his son Henry Mandel, who was the former husband of the plaintiff in error, Mary Miller. At the time these conveyances were made Christian Mandel did not own any considerable amount of personal property. Apparently for the purpose of equalizing the distribution among the different children, some of the sons executed notes and trust deeds upon their shares. Two of these trust deeds were for $4500 each and were executed by Louis and Henry Mandel, and it appears that the money thus secured was for the benefit of Theodore and Christian Mandel. In addition to these trust deeds executed between the sons to equalize their several shares, it appears that each of the four sons executed a note and trust deed to their father for $1700 and secured the same by a trust deed upon the respective shares of land conveyed to them. Henry Mandel and his first wife, Augusta Mandel, executed a note for $1700 and a trust deed upon the land received from Christian Mandel to secure the same. Each of the other three sons executed a like note to the father. It is this $1700 note and trust deed that are in question in this suit. Plaintiff in error contends that at the time the conveyances were made there was another written agreement entered into, by which the four sons agreed to pay their father an annuity of $100 each, and that the $1700 note and trust deed were executed by them to secure the payment of the $100 a year to their father for a period of ten years, if he should live that long. On the other hand, it is contended by defendants in error that the $1700 note was given as a part of the consideration

for the conveyance of the land and to create a fund to pay
Dorothea Mandel a part of her share of her father's estate.
At the time of the death of Christian Mandel, in 1900, the
four $1700 notes and trust deeds were found among his
papers, with endorsements of four $100 credits, one each
year, except for the years 1899 and 1900. The latter year
both Henry Mandel and his father died, and as to the year
1899 it is claimed that the $100 was paid by board and
care. Whether the $1700 note was an unconditional un-
dertaking to pay the sum mentioned, or was intended as
collateral security to the contemporaneous agreement which
it is claimed provided for the payment of $100 per annum
to Christian Mandel for ten years, is the only question in-
volved in this controversy.

The note of Henry Mandel and Augusta, his wife, is
an unconditional promissory note dated February 1, 1894,
and payable ten years after date, with interest at six per
cent per annum, payable semi-annually. The note recites
that it is secured by a trust deed executed to Fred Man-
del, Sr., on real estate located in Cook county, Illinois. The
note has an assignment upon it by Louis Mandel, as ad-
ministrator of his father's estate, to the defendant in error
Dorothea Klatt, in payment of her distributive share of the
estate of Christian Mandel, deceased. There are no con-
ditions or limitations whatever in the note or in the trust
deed given to secure the same. The limitations and con-
ditions relied upon by plaintiff in error were supposed to be
embodied in a contemporaneous written agreement signed
by all of the children of Christian Mandel at the time he
made a distribution of his property. This agreement was
lost and its terms had to be proven by secondary evidence.

The execution of the $1700 note and trust deed by
Henry Mandel and his former wife, and their delivery to
Christian Mandel, Sr., were not denied, and there is no
contention that defendant in error Dorothea Klatt is not
the legal holder by due assignment by the administrator of

Christian Mandel. The introduction in evidence of the note and trust deed, together with the assignment, made a case entitling Dorothea Klatt to a decree of foreclosure. The defense interposed was, that there was a collateral agreement by which Henry Mandel agreed to pay his father $100 a year for ten years, which was embodied in another instrument executed at the same time, and that the $1700 note and trust deed were given merely as collateral security to the lost agreement. Plaintiff in error had the burden of establishing this defense. The issue involved required the plaintiff in error to show that a note and trust deed absolute upon their face were subject to some limitation or condition not expressed in the writing. To maintain an issue of this kind requires clear and convincing proof. (*Sutphen* v. *Cushman,* 35 Ill. 186; *Lindauer* v. *Cummings,* 57 id. 195; *Burgett* v. *Osborne,* 172 id. 227; *Heaton* v. *Gaines,* 198 id. 479; *Rankin* v. *Rankin,* 216 id. 132.) When a contract is relied upon as modifying the plain and unambiguous terms of a written instrument, the evidence must be clear and convincing before a court will depart from the plain language of the written agreement. Here the contract relied upon as modifying the terms of the note and trust deed is not produced. There is only one witness who testifies to the substance of the contents of the lost instrument, and that was the justice of the peace who claims to have prepared the contracts between the parties, including the lost agreement. He undertakes to state the substance of the contents of the lost instrument, but his memory is not clear as to the exact wording of the instrument. He says that his recollection is not clear whether these notes were given to secure the payment of $100 a year mentioned in the lost agreement to Christian Mandel, or whether the agreement was that the interest on the several $1700 notes was to be paid to Christian Mandel for ten years. We think, after reading his evidence carefully, that it is not clear in his mind whether the agreement was that the in-

terest on these notes was to be paid to Christian Mandel, or whether the notes were executed merely to secure the payment of a life annuity of $100 per annum. It is not improbable that the collateral agreement referred to was a stipulation by which the sons each agreed to pay the interest on their respective notes of $1700 to their father. Six per cent on $1700 would be $102. When it is remembered that the father was making a full distribution of his entire estate among his children it is not at all improbable that he would want some provision for his own support during the remainder of his life, and a very equitable and reasonable way to accomplish this would be to require each of the sons to pay the interest on their notes to him for ten years or during his natural life. This seems more probable in view of what was, in fact, done by the parties. There was a payment of $100 per year made by the sons to the father, and these payments were endorsed on the back of their respective notes. On the back of the note in suit the entries were: "Henry Mandel, Augusta Mandel, December 11, 1894.—100 Dooler; February 1st, 1896.—100 Dooler; 1897.—100 Dooler; 1898.—100 Dooler." It is stipulated that these entries were made by Christian Mandel and that the word "dooler" was used for dollar. If, as plaintiff in error contends, the trust deed was merely designed to secure the payment of the $100 annuity, it is strange that the $1700 note was executed at all. No explanation is made by the justice of the peace why the transaction was given this circuitous and complicated form when the trust deed might have been made simply to secure an agreement in relation to the annuity, leaving the $1700 notes entirely out of the transaction. The justice of the peace further admits in his testimony that there was nothing in the lost agreement in relation to the surrender of the $1700 notes after the payment of the annuity ceased. The evidence for plaintiff in error in support of the original bill specifically shows that there was another instrument in writing executed between

the parties, but it fails to show with any degree of certainty that there was anything inconsistent in that agreement with the express terms of the $1700 note and trust deed.

There was no error in dismissing the original bill and granting a decree of foreclosure upon the cross-bill.

The decree of the circuit court, and the judgment of the Appellate Court affirming the same, are affirmed.

*Judgment affirmed.*