JAMES M. HELM

*v.*

HELEN G. BOYD.

*Filed at Mt. Vernon March 27, 1888.*

1. MORTGAGE—*of a deed absolute in form—whether a mortgage.* By the statute, every deed conveying real estate, intended only as a security in the nature of a mortgage, though absolute on its face, is to be considered as a mortgage.

2. SAME—*of evidence to show a deed absolute in form to be a mortgage only.* A deed absolute in form may be shown by parol to be a mortgage, but in the absence of evidence to the contrary the law will presume such a deed is what it purports to be,—an absolute conveyance. To show the deed is a mortgage, the evidence must be clear, satisfactory and convincing. The question is one of intention, to be ascertained from all the circumstances.

3. In this case a father induced his daughter to convey to him her interest in land on an expressed consideration much less than its real value, advancing, at the time, the sum named as the consideration, to her husband by way of loan, and no time was mentioned for repayment. The father, however, led the grantor to believe that there would be enough coming to her from his estate to cancel the indebtedness, and assured her that she would get the land back without being troubled as to paying back the loan: *Held*, that the deed was to be treated as a mortgage, to secure the money advanced to the grantor's husband.

4. EVIDENCE—*declarations in one's own favor.* On a bill by the grantor in a deed to have the conveyance declared a mortgage, and to redeem from the same, the declarations of the grantee, in his lifetime, in the absence of the grantor, to the effect that he had purchased the property, are incompetent evidence against the grantor.

APPEAL from the Circuit Court of Wabash county; the Hon. C. C. BOGGS, Judge, presiding.

This is a bill in chancery filed in the circuit court of Wabash county by the appellee against the appellant, who is her brother.

Appellee, whose maiden name was Helen G. Helm, inherited from her mother, who died in July or August, 1874, one-seventh of a tract of $742\frac{41}{100}$ acres in Wabash county, and one-seventh of a part of block 18 in the town of Grayville in

White county. By a quitclaim deed, dated and acknowledged January 10, 1882, and recorded on June 9, 1884, in White county and on January 21, 1885, in Wabash county, appellee and her husband, James S. Boyd, conveyed the said one-seventh interest in said property to John J. Helm, appellee's father, for an expressed consideration of $1000. By a quitclaim deed, dated and acknowledged January 17, 1885, and recorded January 21, 1885, John J. Helm and his wife, Annie V. Helm, (the latter being appellee's step-mother,) conveyed said interest, for an expressed consideration of $1000, to the appellant, John J. Helm's son, reserving to John J. Helm the use and benefit of said premises during his life.

Appellee alleges, in her bill, that her one-seventh of said property was worth $3000 on January 10, 1882; that, on that day, her father loaned her $1000 without interest, and that she and her husband made the quitclaim to him to secure such loan; that the deed was not intended by her and her father to be an absolute one, but that it was expressly agreed between them, that he should hold the deed and the land as security for the loan, and should reconvey the land to her upon repayment of the $1000; that, when her father deeded her interest to the defendant, her brother, the latter had due notice and full knowledge of her rights and of the terms, on which her father held the property; that it was expressly agreed between her father and the defendant, that she should have the right to redeem upon paying defendant $1000 with legal interest; that defendant, since the death of John J. Helm, their father, in March, 1886, has collected $300 of rents; that, on December 2, 1886, she tendered to defendant $1000 with legal interest and offered to pay him what was due to him, but he refused to accept the money or reconvey the premises. The bill prays for an account, and that, upon the payment to defendant of the amount due him, he may be required to reconvey and deliver possession of the premises to the complainant.

The answer admits the original ownership by complainant and the execution of the quitclaim deeds, but denies that the deed to John J. Helm was made to secure a loan, and claims that it was made to carry out a sale of the property, and that John J. Helm paid complainant $1000 as purchase money. The answer also denies, that, when the defendant took the deed from his father, he had any notice of complainant's alleged interest in the premises, and claims, that he bought the property in good faith and paid $1000 for it, and that $1000 was its full value, and furthermore denies, that defendant agreed to allow complainant to redeem, or that he collected $300 of rents. The answer claims the benefit of the Statute of Frauds.

Replication was filed to the answer, and the cause was heard upon bill, answer, replication and proofs taken and filed.

The circuit court found the allegations of the bill to be true, and decreed that appellee should pay to appellant within sixty days $992.40 with six per cent interest from May 26, 1887, till paid, and that, thereupon, appellant should convey all his right, title and interest in the premises to appellee, and, upon his failure to make such conveyance within twenty days after such payment, it was ordered that the master make the deed, etc.

Messrs. BELL & GREEN, and Mr. THOMAS G. PARKER, for the appellant:

The deed on its face shows an absolute sale and conveyance, and the *onus* was on appellee to show it was intended by both parties to be a mortgage. *Bentley* v. *O'Bryan*, 111 Ill. 53.

To establish a deed, absolute on its face, to be a mortgage, the evidence must show clearly that it was intended, at the time of its execution, to be a mortgage. *Sharp* v. *Smitherman*, 85 Ill. 153.

To establish a deed, absolute in form, to be a mortgage, the evidence must be strong and convincing. *Hartnett* v. *Ball*, 22 Ill. 43; *Hancock* v. *Harper*, 86 id. 445; *Bartling* v. *Brasuhn*, 102 id. 441.

Where a deed for land on its face appears to be an absolute and unconditional conveyance, and is acknowledged and delivered, the law will presume, in the absence of proof clearly showing the contrary, that it is what it purports to be,—an absolute conveyance. *Bentley* v. *O'Bryan,* 111 Ill. 53.

Where a conveyance of land is in form absolute, in order to change its character to that of a mortgage, the proof must show clearly that such was the contract and intent of the parties. *Clark* v. *Finlon,* 90 Ill. 245; *Dwen* v. *Blake,* 44 id. 136; *Price* v. *Karnes,* 59 id. 277; *Remington* v. *Campbell,* 60 id. 516; *Magnusson* v. *Johnson,* 73 id. 156.

A deed, absolute on its face, will never be held to be a mortgage, unless the proof is clear and positive that it was so intended by the parties. *Bailey* v. *Bailey,* 115 Ill. 551.

In the light of the facts, instead of the transaction being a loan and mortgage, it was an advancement and conveyance of the land in trust, the purposes of the trust resting wholly in parol, and are clearly within the Statute of Frauds, and can not be proven by parol evidence when the statute is pleaded, as in this case. *Lawson* v. *Lawson,* 117 Ill. 98.

Mr. J. R. WILLIAMS, for the appellee:

When we take into consideration the value of the property, the intimate relationship of the parties, and the wonderful influence which a father of sixty-five years has over a daughter who is a mere child, and the implicit confidence the child has in such father, does not the evidence in this record clearly and conclusively show that equity would allow the daughter to redeem from such a conveyance? The language of the parties, the acts and circumstances connected with the transaction, should not be construed by the same rule as though the parties were strangers.

In equity, the form of the transaction is not regarded, but the substance must control. In cases of this sort, the real character of the arrangement may as often be gathered from

the nature of the transaction and character of the circumstances as from the express declaration of the parties. *Preschbaker* v. *Feaman*, 32 Ill. 475; *Sutphen* v. *Cushman*, 35 id. 186; *Miller* v. *Thomas*, 14 id. 428.

We admit the rule is, that clear and convincing evidence is required to show that an absolute deed was intended as a mortgage, but insist the proof in this case is of that character.

A right or privilege to redeem from an absolute deed may exist without any legal obligation on the other side compelling the party to redeem. *Wright* v. *Gay*, 101 Ill. 233.

The Statute of Frauds is not applicable in this case. *Life Ins. Co.* v. *White*, 106 Ill. 67; *Worden* v. *Crist*, 106 id. 326; *Wright* v. *Gay*, 101 id. 233; 2 Washburn on Real Prop. (3d ed.) 451.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The first question is whether the deed from appellee and her husband to her father, John J. Helm, was an absolute conveyance or a mere mortgage security. The statute says: "Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." (Starr & Curtis' Ann. Stat, chap. 95, entitled "Mortgages," sec. 12, p. 1636.)

A deed, absolute on its face, may be shown by parol to be a mortgage. The law will, however, presume, in the absence of proof to the contrary, that such a deed is what it purports to be—an absolute conveyance. The party, who claims an absolute deed to be a mortgage, must sustain his claim by proof sufficient to overcome this presumption of the law. Before a deed, absolute in form, will be held to be a mortgage, the evidence must be clear, satisfactory and convincing. It must be made to appear clearly, that such a conveyance was intended to be a mortgage at the time of its execution. The

question is one of intention to be ascertained from all the circumstances. *(Sharp* v. *Smitherman,* 85 Ill. 153; *Bartling* v. *Brasuhn,* 102 id. 441; *Bentley* v. *O'Bryan,* 111 id. 53; *Work-man* v. *Greening,* 115 id. 477.)

An examination of the testimony is necessary in order to see what the real intention of the parties was. It is not clear from the evidence whether appellee's mother died before or after July 1, 1874. But it is admitted by counsel on both sides, that John J. Helm had a life interest as tenant by the curtesy in the one-seventh part of the premises in question, which appellee inherited from her deceased mother. When she deeded her one-seventh interest to her father on January 10, 1882, she was only twenty years old, and had then been married only about six months.

Appellee swears, that her father proposed to her to advance $1000 to her husband, James S. Boyd, to start him in business; that her father said he did not want the land, and that the payment of the $1000 was merely an advancement made to help her and her husband, and that it would all come back to her; that he told her the land had been left to her by her mother and should all come back to her and her children; that she never asked her father for money, when he proposed to advance money on the land; that she never offered to sell the land to him and he never offered to buy it; that, when she signed the deed, he said to her: "You and Jim are young yet and I merely do this to have a little jurisdiction over it; as for the deed being recorded there shall never be a scratch of the pen against your property; as far as the $1000 is concerned I will make that right with the other children;" that, in July, 1885, when she learned that her father had recorded the deed from her and had made a deed of the land to her brother, the appellant, she asked him about it, and he replied: "I transferred to Jimmy Helm under the same conditions that I got it from you, and he is to let you have it back; I did it to keep Annie (the second wife) and her children from getting

a foothold; * * * your brother will do what is right;" that, when she made the deed to her father, she did not know how much land she owned or was conveying or anything about its value; that, an hour after she made the deed, her father paid $500 and the balance in small amounts from time to time; that there was no agreement between her and her father about re-paying him the $1000, etc.

James S. Boyd swears, that in November and December, 1881, and again about January 1, 1882, John J. Helm proposed to advance money to him to go into business by buying an interest in a printing office, and said he would take a quit-claim deed on Helen's portion of the property, and let them have $1000, part of which he would pay next morning; that "he requested me to explain the matter to my wife; he said for me to have no fears, for the amount would all come back to us children, and he would make it satisfactory with the other children;" that John J. Helm "said he took the deed to have a little jurisdiction over us and the amount he advanced us, as we were both young, and that the deed should never be recorded;" that he talked with his wife and told her to do what she thought best and she said she was satisfied her father would "stick to what he says;" that the next morning he told Mr. Helm his wife "was willing to *get or borrow the money;*" that neither he nor his wife knew the amount or value the deed called for; that he never offered to sell his wife's land to her father nor asked him to furnish money to go into business with; that, when the deed was made, Mr. Helm said: "I merely advanced this much money on the place; * * * eventually this will all come back to her; I will see that it is made up to the other heirs;" that his wife's father never stated that he expected the $1000 to be paid back to him and never asked for it.

Annie V. Helm, widow of John J. Helm and step-mother of appellee, swears that her husband told her, before Mrs. Boyd made the deed to him, that he wanted to get the deed to keep

them from disposing of the land to Mr. Gray (the brother of Helm's first wife); that, after her husband received the deed, he said he intended to give it back to appellee, and merely wanted to get it in such a way that she could not dispose of it; that he never had the deed recorded on that account; that appellant wrote to his father advising the latter to get a deed from Helen to prevent the land going into Gray's hands, and that such letter was sent to Mrs. Malcom Eastwood, (appellant's sister), to prevent it from falling into the wrong hands; that on the evening before she and her husband conveyed the premises to appellant, her husband said to her: "He (appellant) wants me to make that property over to him and I don't want to do it;" that she (witness) did not want to sign the deed to James, and reminded her husband of his promise to give the land back to Helen, and he said that "Jimmie would make it all right with her."

Jane Kelton swears: "A short time before John J. Helm made the deed to James M. Helm for said lands I heard said John J. say Jimmie would hold the property for Ella the same as he had, and Mrs. Helm objected to doing it."

George W. Cline, the attorney who drew the deed, made by appellee to her father, swears that, before the deed was executed, John J. Helm told him, that he wanted the deed so that he could control the property, and keep Boyd from disposing of it "if he got to drinking," and that he was afraid Gray might get hold of it; that Helm also told him, that the property would go to Ella at his death and that "he did not want it to get mixed up with his other property."

The testimony of Catharine A. Wintermute confirms the evidence of appellee and Annie V. Helm in several particulars.

There is a considerable amount of testimony in the record as to the value of the land. After a careful examination of it, we are satisfied that appellee's one-seventh interest in the property, notwithstanding the fact that it was an undivided interest and subject to her father's life estate, was worth very

much more than $1000, when she made the deed to her father and when the latter made his deed to appellant.

Appellant testified as follows: "About the first of 1885, said John J. Helm told me he had bought Mrs. Boyd's share of her mother's estate; that he had advised her not to sell it, and told her that at his death the property would be worth more than she could then realize on it, on account of his life estate; that she insisted on his buying it, and said if he did not she would sell to some one else; that he bought the property to keep it from falling into other hands, and paid her $1000 for it, and that he had to borrow money to pay for it. He proposed that I buy it from him at the same price, to prevent Mrs. Helm No. 2 and her children getting a foothold in my estate."

Mary W. Helm, a sister of appellant and appellee, testified on behalf of appellant as follows: "I heard a conversation between father and complainant, in which he advised her not to sell her interest in said lands. He told her it would be worth more at his death than she could get for it then. She wanted $1200, and he told her he could not give more than $1000; that he did not think any one would give more than that when they could not get possession until he died. She said she would rather have the money then to buy a homestead. They were on the front porch, and I was in the hall. I think this was in July, 1881. I also heard Pa tell Mr. Boyd that he thought Ella was very foolish to sell her land."

John J. Helm, Jr., and J. R. Eastwood testified as to declarations of John J. Helm to the effect that he purchased the property, but, as these declarations were made in his own favor and in the absence of appellee, they were clearly incompetent.

The circuit judge found that the deed from appellee to her father was a mere security, and we are unable to say that the evidence does not sustain his finding.

The relation, in which John J. Helm stood to his daughter, naturally gave him great influence over her. The price, which he is claimed by appellant to have paid her for her property, was greatly below its real value. Her statement that he promised not to record the deed is confirmed by the fact, that such deed, although executed on January 10, 1882, was not, as matter of fact, recorded in White county until June 9, 1884, nor in Wabash county until January 21, 1885.

It is true, that she did not agree to pay back the $1000 at a definite time. Her father would appear to have held out to her the idea, that she would get enough from his estate to pay back the $1000, or that there would be enough coming to her from his estate to cancel the indebtedness of $1000. Still, the impression made by the evidence is, that, if he did not actually practice a fraud upon her, he induced her to deed to him her property under the belief that in some way it was to come back to her, and that she was not to be troubled about re-paying the amount advanced to her. We said in *Workman v. Greening, supra:* "If it shall appear, no matter what the form of the transaction, that the conveyance is, in fact, but an indemnity or security, it will be held a mortgage, and the character of liability against which indemnity is intended, or the kind or dignity of indebtedness intended to be secured, is unimportant."

The next question is, whether appellant had notice of appellee's rights when he received the deed from his father of his sister's one-seventh interest. There is testimony, that he had *actual* notice of such rights. Mrs. Helm, who is a disinterested witness, swears, that, when she and her husband were having a conversation about her signing the deed to appellant, and while she was reminding him of his promise to give the land back to appellee, and was refusing to sign the deed he wanted her to sign, the appellant was in the adjoining room or hall and called out to his father, "make her sign it," showing that he heard the conversation.

The decree directs, that there shall be returned to appellant the $1000, which he paid to his father, with interest thereon, subject only to the deduction of rents received by him from the property.   We think the decision of the court below does justice between the parties.

The decree of the circuit court is affirmed.

*Decree affirmed.*