### VALERIA W. FISHER *et al.*

*v.*

### HETTY H. R. GREEN *et al.*

*Filed at Ottawa May 12, 1892.*

1.  TRUST DEED—*sale under power granted—after death of subsequent owner of right of redemption.* In 1872 the owner of land conveyed the same in trust, to secure a loan of money, after which he sold and conveyed the land to F., who assumed the payment of the incumbrance, and who afterwards reconveyed to the original owner, whereby he parted with his equity of redemption. F. died January 11, 1878, and on the tenth day of the following July the trustee, under a power in the trust deed, sold the land to the holder of the debt for a default in payment, such sale being in all respects regular: *Held*, that the trustee's sale and deed passed the title to the land, notwithstanding the death of F. The death of F. had no effect upon the right of the trustee to sell, for the reason that he was not the grantor in the trust deed, the case being governed by the act of 1869, and not by the act of 1874.

2.  MORTGAGE WITH POWER OF SALE — *effect of act of 1874 relating to death of mortgagor.* Section 13 of the act of 1874, revising the law in relation to mortgages, taking away the right to foreclose and sell under any power of sale in any mortgage or deed of trust, in case of the death of the mortgagor or grantor, on the death of the holder of the equity of redemption, operates prospectively, and has no application to deeds of trust or mortgages containing a power of sale which were in existence at or before such law went into effect.

3.  Such law should be regarded as only the declaration of a public policy and the establishment of a rule, to which persons thereafter accepting mortgages or deeds of trust with powers of sale were required to conform, but it was not intended to have the effect of impairing or in any way interfering with existing securities, such securities being left subject only to those rules of law which were in force at the time of their execution.

4.  SAME—*power of sale is a property right.* A power of sale in a trust deed, when allowed by law, is a power coupled with an interest. It creates a trust, in the specific execution of which the party secured has a property right.

5.  STATUTES—*construed to have a prospective operation.* Even in the absence of constitutional obstacles, a construction giving a statute a prospective operation will be preferred by the courts, unless a purpose to give it a retrospective force is expressed by clear and positive com-

mand, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute, taken by themselves and in connection with the subject matter and the occasion of the enactment, admitting of no reasonable doubt, but precluding all questions as to such intention.

6. SAME—*whether constitutional.* The act of 1874, relating to mortgages, if intended to apply to a deed of trust given before it went into effect, while operating upon the remedy, would have the effect of depriving the party secured of the right of having the mortgaged property sold under a power of sale and without redemption, and substituting in the place of such sale a judicial foreclosure and sale with redemption would be in violation of the constitution, as impairing the obligation of the contract.

7. SAME — *changing the remedy — whether constitutional.* Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of contracts; but if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the constitution.

8. The remedy existing in a State when and where a contract is made and is to be performed, is a part of its obligation, and any subsequent law of such State which so affects that remedy as to substantially impair and lessen the value of the contract itself is forbidden by the Federal constitution, and therefore void.

9. DEED—*presumed to be absolute and not a mortgage.* Where a deed is made which appears on its face to be an absolute conveyance, it will be presumed to be such; and this presumption will prevail unless overcome by clear, convincing and satisfactory evidence that a mortgage was in fact intended at the time of its execution.

10. SAME — *whether a deed absolute or a mortgage — the test applied.* Where a mortgagor of land executes to the mortgagee a deed for the same, absolute in form, and the latter assumes payment of a prior mortgage, and at the same time cancels the notes held by him on the grantor, and no other notes are given evidencing the indebtedness, and no agreement is made showing the indebtedness as still subsisting, this will afford strong evidence that the deed was intended as an absolute conveyance and the mortgage debt cancelled.

11. As there can be no mortgage without a debt or obligation, one of the tests by which to determine whether a conveyance of lands made in consideration of the grantor's indebtedness to the grantee is to be deemed to be an absolute sale or a mortgage, is the effect which the parties intend the conveyance shall have upon the indebtedness itself. If the debt be not cancelled, equity will regard the conveyance as a mortgage, whether the grantee so regards it or not.

6—142 ILL.

12. EVIDENCE—*oral contract—how proven—conclusions of witness not admissible.* The proper proof of an oral contract should consist of the testimony of witnesses who are able to state, either literally or in substance, the language used by the parties in forming their contract, and it then becomes a question of law whether any contract is formed, and what are its terms. The testimony of a witness giving his understanding or version of a contract, without attempting to state the language used by the parties in forming it, is merely testimony as to legal conclusions, and is therefore improper, and can have no legitimate tendency to prove what the real contract was.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. CONSIDER H. WILLETT, for the appellants:

The quitclaim deed may be shown by parol evidence to be a mortgage. *Workman* v. *Greening,* 115 Ill. 477; *Life Ins. Co.* v. *White,* 106 id. 67; *Life Ins. Co.* v. *Slee,* 110 id. 35.

A release of the equity of redemption must be upon a new and adequate consideration. A change of time in the papers between the parties is no consideration. *Holdridge* v. *Gillespie,* 2 Johns. Ch. 30; *Brownlee* v. *Martin,* 21 S. C. 392; *Robinson* v. *Willoughby,* 65 id. 520.

The existence of a debt makes a mortgage. Coote on Mortgages, 17; Pomeroy's Eq. Jur. sec. 1195; *Campbell* v. *Dearborn,* 109 Mass. 130; *Holton* v. *Meighan,* 15 Minn. 69.

It is not necessary that such debt be evidenced by a note or bond. *Reed* v. *Reed,* 75 Me. 204; *Hone* v. *Ketellis,* 46 N. Y. 605.

If courts are in doubt whether the transaction be a mortgage or not, they solve the doubt by declaring the transaction to be a mortgage. *Russell* v. *Southard,* 12 How. 139; *Strover* v. *Bounds,* 1 Ohio St. 107; *Reed* v. *Reed,* 75 Me. 264.

A foreclosure is essential to destroy an equity of redemption. *Jackson* v. *Lynch,* 129 Ill. 72; *Tennery* v. *Nicholson,* 87 id. 464.

The Statute of Limitations which governs the facts of this record is sixteen years. Gross' Stat. chap. 66, sec. 4; *Wilson* v. *Richards,* 1 Neb. 342.

The statute concerning the payment of taxes for seven years is no bar, for want of facts. *Lyman* v. *Smilie,* 87 Ill. 259; *Hurlbut* v. *Bradford,* 109 id. 397.

*Laches* has no application where the equity of redemption exists. *Jackson* v. *Lynch,* 129 Ill. 72; *Haworth* v. *Taylor,* 108 id. 275; *Gibbons* v. *Hoag,* 95 id. 45; *Manlove* v. *Bale,* 2 Vern. 84.

The legislature may, at its pleasure, change remedies. Such action does not impair the obligation of contracts. *Newkirk* v. *Chapron,* 17 Ill. 344; *Holcomb* v. *People,* 79 id. 409; *Jensen* v. *Fricke,* 133 id. 171.

Where the point has been made, it has been held that upon the death of the owner of the equity of redemption the power of sale can not be exercised. *Buchanan* v. *Monroe,* 22 Tex. 537; *Robertson* v. *Paul,* 16 id. 472; *Lathrop* v. *Brown,* 65 Ga. 312.

The legislature may change remedies, whether created by contracts, statutes or the common law. *Conkey* v. *Hart,* 14 N. Y. 22; *Lawrence* v. *Trust Co.* 13 id. 200; *Van Rensselaer* v. *Snyder,* 13 id. 299; *Worsham* v. *Stevens,* 66 Tex. 89; *Buchanan* v. *Monroe,* 22 id. 537; *Robertson* v. *Paul,* 16 id. 472; *Lathrop* v. *Brown,* 65 Ga. 312; *Kneetle* v. *Newcomb,* 22 N. Y. 249; *Garland* v. *Brown,* 23 Gratt. 177.

Retrospective laws which do not impair the obligation of contracts do not violate constitutional prohibitions. *Lane* v. *Nelson,* 79 Pa. St. 407; *Calder* v. *Bull,* 3 Dall. 386; *Watson* v. *Mercer,* 8 Pet. 88; *Reed* v. *Beall,* 42 Miss. 472; *Hyman* v. *Bayne,* 83 Ill. 256.

Mr. L. H. BISBEE, for the appellees:

Without the clearly expressed intention of the legislature, courts will not give to a law a retrospective operation, even

where they might do so without a violation of the paramount law of the constitution. *Jones* v. *Bond*, Breese, 287 ; *Garrett* v. *Wiggins*, 1 Scam. 335 ; *Thompson* v. *Alexander*, 11 Ill. 54 ; *Matthias* v. *Cook*, 31 id. 83 ; *In re Tuller*, 79 id. 99 ; *Hatcher* v. *Railway Co.* 62 id. 477 ; *McConneaughey* v. *Bogardus*, 106 id. 321 ; *Dobbins* v. *Bank*, 112 id. 553 ; *Means* v. *Harrison*, 114 id. 248 ; *Drainage District* v. *Benson*, 125 id. 490 ; *Robinson* v. *Rowan*, 2 Scam. 449 ; *Prince* v. *United States*, 2 Gall. 204 ; *Whitman* v. *Hapgood*, 10 Mass. 437 ; *Bruce* v. *Schuyler*, 4 Gilm. 221 ; *Somerset* v. *Dighton*, 12 Mass. 383 ; *Hooker* v. *Hooker*, 10 S. & M. 599.

The United States Supreme Court have repeatedly passed upon this exact question. *Bronson* v. *Kinzie*, 1 How. 316 ; *Howard* v. *Bugbee*, 24 id. 461 ; *Edwards* v. *Kerzey*, 96 U. S. 607.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill to redeem, brought by the widow and heirs at law of Charles C. Fisher, deceased, against Hetty H. R. Green, Benjamin E. Gallup and George W. Miller. Defendant Miller was defaulted for want of an answer, and defendants Hetty H. R. Green and Benjamin E. Gallup having appeared and answered, the cause was heard on pleadings and proofs, and on such hearing the court found that the complainants were not entitled to the relief prayed for in their bill, and entered a decree dismissing said bill at their costs for want of equity. On appeal to the Appellate Court said decree was affirmed, and the present appeal is from said judgment of affirmance.

The facts shown by the pleadings and proofs are these : On the 15th day of March, 1872, George W. Miller borrowed of Mrs. Green the sum of $7000, and executed to her his promissory note of that date, for the amount of said loan, due five years after date, and bearing interest at the rate of ten per cent per annum, payable semi-annually, and to secure said

note, said Miller executed to said Benjamin E. Gallup, as trustee, a deed of trust conveying twenty acres of land in Cook county, said deed of trust containing the usual power of sale in case of default in the payment of said note. Miller afterward sold ten acres of said land to parties not now before the court, said sale being made subject to one-half of the incumbrance of said deed of trust, and said purchasers subsequently paid the half of said incumbrance and obtained from said trustee a release of their lands therefrom. On March 24, 1873, Miller sold and conveyed the remaining ten acres to said Charles C. Fisher, who assumed and obligated himself to pay the remaining one-half of said deed of trust, and also executed a second deed of trust on said ten acres to Horace A. Hulburd, as trustee, to secure three notes for $2875 each, payable to the order of said Miller, and maturing in one, two and three years from the date thereof. The first of these notes was paid at or about the date of its maturity.

In 1874, Fisher subdivided the ten acres purchased by him into ninety-six lots, of which he conveyed to a Mr. Snow twenty-four, subject to one-eighth of the incumbrance held by Mrs. Green, and to one-fourth of that held by Miller, and on the 8th day of July, 1876, Fisher and wife executed to Miller a quit-claim deed conveying to him the remaining seventy-two lots, Miller, in and by said deed, assuming the payment of Mrs. Green's incumbrance and agreeing to save Fisher harmless from his previous assumption thereof. Miller at the same time cancelled the remaining two notes executed by Fisher to him, and procured from Hulburd, the trustee, a release of the deed of trust securing the same. The deed from Fisher and wife, and the release by Hulburd, were promptly placed on record.

It is now claimed, and there is evidence, though not of the most satisfactory character, tending to support the claim, that the conveyance of said seventy-two lots by Fisher and wife to Miller, though absolute on its face, was in fact intended by

the parties as a mortgage, it being insisted that the trans-
action between the parties was, in substance, that Miller
should sell said lots, and after retaining a sufficient sum of
money to satisfy and discharge said incumbrances, account
for and pay the residue over to Fisher.

On the 11th day of January, 1878, said Fisher died intes-
tate, and on the 10th day of the following July, default having
been made in the payment of the remaining one-half of Mrs.
Green's incumbrance, Gallup, the trustee, acting under the
power of sale in the deed of trust to him, sold the entire ten-
acre tract which included the seventy-two lots conveyed by
Fisher and wife to Miller, Mrs. Green becoming the purchaser
and receiving a trustee's deed conveying said ten-acre tract to
her.    She thereupon entered into possession of said tract and
caused said subdivision to be vacated, and has ever since re-
mained in possession thereof.    The present bill was not filed
until December 24, 1889.

It is not claimed that said trustee's sale was not conducted
in all respects in strict conformity with the terms of the power
of sale in the Gallup deed of trust, the contention being, first,
that as the conveyance by Fisher and wife to Miller was in-
tended only as a mortgage, Fisher retained and held, up to
the time of his death, the equity of redemption from said deed
of trust, and, second, that as Fisher, the owner of said equity
of redemption, had died prior to said sale, the sale under the
power was prohibited by the statute and was therefore void.

The record furnishes us with no evidence as to the precise
grounds upon which the chancellor who heard the case in the
Circuit Court reached the conclusion that the complainants
were not entitled to the relief prayed for in their bill, and we
may therefore, in support of his decree, assume that all con-
troverted questions, both of fact and of law, were decided ad-
versely to the complainants.    One of the questions of fact
presented at the hearing was, whether the deed from Fisher
and wife to Miller was intended by the parties as an absolute

conveyance or as a mortgage; and we are inclined to the view that the evidence on that subject is so unsatisfactory, that a finding upon that issue adverse to the complainants should not be disturbed on appeal.    In the first place, the deed being absolute on its face, there arises from the form of the instrument itself, a presumption that an absolute conveyance was intended, of such strength, that it will prevail, unless overcome by clear, convincing and satisfactory evidence that a mortgage was in fact intended.

In *Helm* v. *Boyd*, 124 Ill. 370, we said:   "A deed absolute on its face may be shown by parol to be a mortgage.   The law will, however, presume, in the absence of proof to the contrary, that such deed is what it purports to be—an absolute conveyance.   The party who claims an absolute deed to be a mortgage, must sustain his claim by proof sufficient to overcome this presumption of the law.   Before a deed absolute in form will be held to be a mortgage, the evidence must be clear, satisfactory and convincing.   It must be made to appear clearly that such conveyance was intended to be a mortgage at the time it was executed.   The question is one of intention, to be ascertained from all the circumstances."    The rule thus stated is supported by the following decisions: *Hartnett* v. *Ball*, 22 Ill. 43; *Hancock* v. *Harper*, 86 id. 445; *Bartling* v. *Brasuhn*, 102 id. 441; *Eames* v. *Hardin*, 111 id. 634; *Bailey* v. *Bailey*, 115 id. 551; *Tedens* v. *Clark*. 24 Ill. App. 510; *Strong* v. *Strong*, 27 id. 148.

But the theory that the conveyance was intended to be absolute and not by way of mortgage is very greatly strengthened by the circumstance that at the time the deed was executed, Miller cancelled the promissory notes which he held against Fisher, and it does not appear that any other notes evidencing the indebtedness were executed in their stead, or that there was any distinct agreement or understanding that said indebtedness should be regarded as subsisting so as to constitute a personal obligation on the part of Fisher.   The presumption

seems rather to be, that the cancellation of the notes was intended by Miller as a cancellation of the indebtedness, and that the obligation on the part of Fisher to pay it was thereby terminated.

It is a general if not a universal rule, that there can be no mortgage without a mortgage debt. Tiedeman on Real Property, sec. 310. One of the principal tests by which to determine whether a conveyance of lands made in consideration of the grantor's indebtedness to the grantee is to be deemed an absolute sale or a mortgage, is, the effect which the parties intend the conveyance shall have upon the indebtedness itself. As said by Mr. Jones in his treatise on the Law of Mortgages: "If the indebtedness be not cancelled, equity will regard the conveyance as a mortgage, whether the grantee so regarded it or not. He can not at the same time hold the land absolutely and retain the right to enforce payment of the debt on account of which the conveyance was made. The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance." 1 Jones on Mort. sec. 267. Substantially the same doctrine is laid down in *Sutphen* v. *Cushman,* 35 Ill. 186.

In *Freer* v. *Lake,* 115 Ill. 662, it was held that a debt or obligation of some kind is an essential element in a transaction to create the relation of mortgagor and mortgagee. In that case the mortgagor of lands conveyed the mortgaged property to a third person, by a deed containing a clause obligating the grantee to pay the mortgage debt. Said grantee subsequently conveyed the property to the holder of the unpaid notes, under a promise by the latter to give the party so conveying to him whatever could be made out of the property in the next three years, above the debt, interest, taxes, insurance and repairs, and it was held that the mortgage debt was thereby extinguished, and the relation of mortgagor and mortgagee no longer existed.

The evidence introduced by the complainants for the purpose of rebutting the presumptions arising from the facts above referred to and to prove that the conveyance was intended as a mortgage, consists of the testimony of Miller and of Mrs. Fisher. Miller, after testifying that the indebtedness evidenced by said promissory notes was embraced in the consideration of the conveyance, and being pressed by counsel to explain what he meant by said statement, answered as follows: "What I mean is this: Before this deed was executed by Charles C. Fisher and his wife, we entered into this arrangement or agreement; they were to convey the property to me, and I was to make an advantageous sale of the property, and after paying the incumbrance upon the property, return them the balance. In the meantime, they were to have the right of redeeming the property from this quit-claim deed by paying me the indebtedness on the mortgage of about $5000."

The substantial portion of Mrs. Fisher's testimony is as follows: "My husband was sick and not able to fulfil his part of the contract in regard to making payments, and in order to make it easier for us, I signed this deed to Mr. Miller that he might sell the land and pay himself and Mrs. Green, and give us the residue which was left, and I signed the papers with that agreement, and he was to make the sale as he could. Dr. Miller told me when signing that paper, (meaning the deed,) that the agreement was, that he should sell the land, my husband not being able to do it, and I was to sign the papers in trust for him, and he would sell the land and settle the business for us and pay himself, after he had made an advantageous sale, and pay Mrs. Green her indebtedness, and do the best he could under the circumstances."

It will readily be observed that the entire testimony of Miller, so far as he attempts to give evidence of the contract between himself and Fisher, consists of mere legal conclusions, and the same thing may be said to a very considerable extent of the testimony of Mrs. Fisher. The proper proof of an oral

contract should consist of the testimony of witnesses who are able to state, either literally or in substance, the language used by the parties in forming their contract, and it then becomes a question of law whether any contract is formed, and what are its terms. The testimony of a witness giving his understanding or version of a contract, without attempting to state the language used by the parties in forming it, is merely testimony as to legal conclusions, and is therefore improper and can have no legitimate tendency to prove what the real contract was.

Viewing the testimony of these witnesses in the light of this elementary rule of evidence, and also considering its intrinsically vague and uncertain character, we are not prepared to say that the chancellor who heard the case in the Circuit Court was not justified in holding that the evidence tending to give the conveyance in question the character of a mortgage was not sufficiently clear, satisfactory and convincing to overcome the strong presumptions to the contrary arising from the form of the conveyance and the circumstances attending its execution, and in deciding that issue adversely to the complainants.

But if it be conceded that said conveyance was in fact intended by the parties as a mortgage, and that Fisher, at the time of his death, was the owner of the equity of redemption in the mortgaged premises, the question remains whether the sale, after his death, under the power in the Gallup deed of trust, was valid, so as to foreclose his legal representatives of their right to redeem. The decision of this question must depend upon whether the execution of the power in said deed of trust was subject to the provisions of the statute in force at the time said deed of trust was executed, or to those of the statute in force at the date of said sale. The statute in force at the date of said deed of trust was the one approved March 30, 1869, the first section of which is as follows:

"That in case of *the death of the grantor* in any mortgage or trust deed given for the security of money, no sale shall be

made by virtue of any power of sale contained in such mortgage or trust deed, or given in relation thereto ; but the same may be foreclosed in the same manner as mortgages not containing power of sale may now be foreclosed at law or in chancery." Pub. Laws 1869, p. 410.

This statute remained in force until July 1, 1874, when it was superseded by the act to revise the law in relation to mortgages, which went into force on that day. Section 13 of the last mentioned act is as follows :

"In case of the death of the grantor in any mortgage or trust deed in the nature of a mortgage, such grantor being at the time of his decease the owner of the equity of redemption of the premises so granted, *or in case of the death of any person owning the equity of redemption* of any premises mortgaged or conveyed in trust as security for money, no sale shall be made by virtue of any power of sale contained in such mortgage or trust deed, or given in relation thereto; but the same may be foreclosed in the same manner as mortgages not containing power of sale may now be foreclosed at law or in chancery." 2 Starr & Curtis' Stat. 1638.

As Fisher was not the grantor in the Gallup deed of trust, his death, under the provisions of the act of 1869, could have no effect upon the right of the trustee to execute the power contained in that deed of trust. But if, on the other hand, the act of 1874 is to be held to have applied to the execution of said power, it being assumed that Fisher was the owner of the equity of redemption from said deed of trust, no valid execution of the power could be made after his death.

The question then is, whether the act of 1874 should be given a retroactive force, so as to apply to deeds of trust in existence at the time it became a law. There is nothing, we think, in the language of the statute itself which necessitates our giving it such retrospective operation, and the rule undoubtedly is, that in the absence of express language requiring it, a retroactive constructive will not be adopted. The rule

on this subject is laid down in Endlich on the Construction of Statutes, sec. 271, as follows: "The rule to be derived from the comparison of a vast number of judicial utterances upon this subject seems to be, that, even in the absence of constitutional obstacles to retroaction, a construction giving a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute, taken by themselves and in connection with the subject matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention."

Applying the rule thus stated, we find nothing in the language of the statute, in its subject matter, or in the occasion of its enactment, which necessitates its application to powers of sale in existence at the time it became a law, and it should therefore be given only a prospective operation. It should be regarded as only the declaration of a public policy and the establishment of a rule, to which persons thereafter accepting mortgages or deeds of trust, with powers of sale, were required to conform, but it was not intended to have the effect of impairing or in any way interfering with existing securities, such securities being left subject only to those rules of law which were in force at the time of their execution.

But it is urged that the act of 1874, so far as it relates to sales under powers, affects no right, but relates only to the remedy, and that it must therefore be held to apply to all cases where the particular remedy referred to is sought, without reference to the date of the origin of the right sought to be enforced. With this view we are unable to concur. The power of sale in a deed of trust is a power coupled with an interest. It creates a trust in the specific execution of which the party secured has a property right. The power of sale in the deed of trust in question vested in the beneficiary of the

trust the right, in case of default, to have the mortgaged premises sold for the satisfaction of the debt secured, without judicial proceedings and without redemption. The act of 1874, if applied to said deed of trust, has the effect of divesting the party secured of the right to have the mortgaged property sold under the power and without redemption, and of substituting in place of such sale, a judicial foreclosure and sale, with statutory redemption. Such material change in the contract rights of the party secured, even if intended by the Legislature, was in our opinion one which it had no constitutional power to make.

A very similar question was decided by the Supreme Court of the United States in *Bronson* v. *Kinzie*, 1 How. 311. There a mortgage contained a power of sale which was valid under the laws of the State when it was given, and it was held that a law subsequently passed giving the mortgagor twelve months to redeem the property from the purchaser at such sale, and prohibiting the sale from being made for less than two-thirds of the appraised value of the property, so altered the remedy of the creditor as to impair the obligation of the contract. In discussing the question thus presented, the court say: "If the laws of the State passed afterwards had done nothing more than change the remedy upon contracts of this description, they would be liable to no constitutional objection. For, undoubtedly, a State may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own

views of policy and humanity. It must reside in every State to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community. And although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution." In further discussion of the question, the court cite as applicable to the case and reaffirm, the following passage from its decision in *Green* v. *Biddle*, 8 Wheat. 1, in which it was insisted that certain statutes of the State of Kentucky regulated the remedy only, and did not operate upon the right to certain lands: "It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests."

Upon the same principle, it was held in *McCracken* v. *Hayward*, 2 How. 608, that a statute prohibiting the sale of property on execution for less than two-thirds the valuation made by appraisers, impaired the obligation of existing contracts, and was therefore inoperative upon executions issued on judgments founded on such contracts. In *Gantley's Lessees* v. *Ewing*, 3 How. 707, it was held that, as to existing mortgages, foreclosable by sale, the Legislature could not prohibit the sale for less than half the appraised value of the land. In *Howard* v. *Bugbee*, 24 How. 461, it was held that a statute

which allowed a judgment creditor of a mortgagor to redeem the land within two years after a sale under a decree of foreclosure of the mortgage, impaired the obligation of contracts, so far as it applied to such mortgages as were in existence at the time it was enacted. In *Edwards* v. *Keazey,* 96 U. S. 595, it was held that the remedy subsisting in a State when and where the contract is made and is to be performed, is part of its obligation, and that any subsequent law of the State which so affects that remedy as to substantially impair and lessen the value of the contract, is forbidden by the Federal Constitution and therefore void. In that case a subsequent statute provided for the exemption from sale on execution of the personal property of any resident of the State, and also of a homestead of the value of $1000, and it was held that said statute, though relating to the remedy, so far impaired the obligations of existing contracts as to be obnoxious to the constitutional provision prohibiting the passage of laws impairing the obligation of contracts.

In the light of these decisions, it seems to us to be clear, that the statute in question here, as applied to the deed of trust under consideration, though affecting only the remedy, was a substantial impairment of the obligation of the contract and therefore void. It follows that the death of Fisher presented no obstacle to the execution of the power of sale in the deed of trust. If it be admitted that at the time of his death he was the owner of the equity of redemption from said incumbrance, he was not the grantor therein, so as to bring the case within the provisions of the act of 1869. The act of 1874 not being applicable, the sale was valid, and was an effectual foreclosure of any right of redemption there may have been remaining in Fisher's legal representatives.

We see no ground for disturbing the decree of the Circuit Court, and the judgment of the Appellate Court affirming said decree will be affirmed.

*Judgment affirmed.*