### Bragio Bartoletti et al., Plaintiffs in Error, v. Henry Hoerner et al., Defendants in Error.

### Gen. No. 5106.

1. EVIDENCE—*attorneys as witnesses.* An attorney of record in a cause is not for that reason disqualified as a witness for his client; his relation to the controversy only affects his credibility.

2. EVIDENCE—*what not hearsay.* Where a party in interest has referred to a third person as having a matter in charge and states that such person can tell with respect to such matter, the statements of the person so referred to become original evidence.

3. CONVEYANCES—*what essential to establish deed as mortgage.* While a deed absolute on its face may be shown by parol to be a mortgage, the law will presume, in the absence of proof to the contrary, that such a deed is what it purports to be—an absolute conveyance. He who claims such a conveyance to be a mortgage, must sustain his claim by proof which is sufficient to overcome such presumption of the law, and by proof which is clear, satisfactory and convincing. A deed absolute on its face will never be construed as a mortgage unless an obligation existed between the parties to the deed which the grantee therein might enforce.

Bill in equity. Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 19, 1909. Rehearing denied April 13, 1910.

**Statement by the Court.** This was a bill in equity filed by Bragio Bartoletti, in behalf of himself and the other plaintiffs in error, to have a deed of certain lots therein described made to defendant in error, Henry Hoerner, declared to be a mortgage, and for the right to redeem therefrom. The bill alleged that plaintiffs in error purchased from John H. Quinn and wife, September 27, 1904, lots four, five, twelve and thirteen in block ten, in La Salle Center Addition to Peru, for $2,850; that Quinn and his wife gave them a bond for a deed and $500 was paid; that they entered into and are still in possession of said premises; that they made improvements thereon to the extent of about $2,000; that the premises are now worth about $6,000; that after the execution and delivery of the bond, Quinn died; that prior to his death no further payments were made; that about three months before the filing of the bill, Walter H. Panneck, who was acting for defendant in error Hoerner, knowing the plaintiffs in error were anxious to borrow money to pay the balance of the purchase price, sent for plaintiffs in error, Amedeo Picchiono and Bragio Bartoletti, and represented to them that Hoerner would loan them sufficient money to pay the balance of the purchase price of said lots, and also pay a certain mechanic's lien of $900 thereon in favor of W. H. Hunter, provided plaintiffs in error would assign their interest in said bond for a deed to him, and that thereupon he would pay the balance due to the Quinn heirs on said purchase, and take to himself a deed of said property, and hold the same as security for the money so advanced by him; that relying upon such statement, plaintiffs in error assigned their interest under said bond to Hoerner, who paid the balance due and the mechanic's lien, and received a deed from the Quinn heirs; that plaintiffs in error were, at the time of the delivery of the deed to Hoerner by the Quinn heirs, conducting a saloon on a portion of

said premises, and that Hoerner was interested in a brewing company; that shortly after the delivery of the deed to him, he notified plaintiffs in error that they must use the beer manufactured by this company exclusively, which they refused to do; that thereafter a beer driver of the brewery company with which plaintiffs in error had a running account, wrote in the back of their beer account book, "Rent for September, 1907, $50.00" without the knowledge or consent of plaintiffs in error; that they immediately notified Hoerner and the brewing company that they would not continue the use of their beer, and requested a statement from Hoerner of the amount paid by him to the Quinn heirs and Hunter; that he refused to furnish the same; and fraudulently claimed to be the owner of said premises in fee; that he instituted forcible entry and detainer proceedings before a justice of the peace of La Salle county, and by falsely swearing, obtained judgment against plaintiffs in error for possession of said premises; that said justice, at the request of defendant in error and his attorney, Panneck, fixed the appeal bond at $1,000 which plaintiffs in error were not able to furnish; that unless an injunction issue at once without notice, restraining the defendants in error from proceeding under said judgment, plaintiffs in error would be dispossessed, and their rights unduly prejudiced. The bill further alleged that the $500 paid Quinn was deducted from the purchase price of $2,850 when Hoerner advanced the money; that while the deed was an absolute deed upon its face, it was not intended to be such by plaintiffs in error, but on the contrary, it was expressly understood and agreed between plaintiffs in error and Hoerner, that the premises thereby conveyed should be held as security for the moneys advanced to pay the Quinn heirs and Hunter, and that upon the payment to him at any time thereafter, of the money so advanced, he would reconvey said premises to plaintiffs in error by an absolute deed;

that plaintiffs in error had arranged for, and were willing to pay defendant in error, Hoerner, all that was due him under the terms of said agreement together with interest thereon, upon the amount being ascertained; that plaintiffs in error had an equity to the value of $2,500 in the premises, out of which defendant in error Hoerner was trying to defraud them. The bill prayed that the deed from the Quinn heirs be decreed a mortgage; that the court decree the amount due, and that, upon payment thereof, Hoerner be compelled to convey the fee of said premises to plaintiffs in error; that because of the inability of plaintiffs in error to furnish bond, an injunction issue without bond and without notice, restraining Hoerner from taking any action under the judgment in the forcible entry and detainer proceedings, and restraining the issuing of a writ of restitution by defendant Huber on said judgment, and the bill concluded with a prayer for general relief.

An injunction was issued in accordance with the prayer of the bill, and a motion to dissolve the same was overruled, whereupon, defendant Hoerner answered the bill, admitting that plaintiffs in error purchased the property from Quinn and wife for $2,850 on September 27, 1904; that a bond for a deed was made to plaintiffs in error, and $500 paid on the purchase price at that time; that they entered into possession of the property, and were still in possession of the same, and had made valuable improvements thereon, but denied that they amounted to $2,000, and averred that they were made on credit; that a mechanic's lien was put upon said premises to secure the payment of said improvements, and that said defendant, Hoerner, paid said lien in full out of his own funds; denied that the property was worth to exceed $4,500; denied that Walter A. Panneck was authorized to arrange for him as alleged in the bill, and denied that he held the property as security for moneys advanced to or in behalf of plaintiffs in error;

and the answer alleged that plaintiffs in error requested him to start them in the saloon business, and procured saloon fixtures from him; that he gave them credit until they were heavily indebted to him; that they told him they were behind in their payments on said premises, and suggested that he take an assignment of their contract, letting the $500 paid thereon wipe out the indebtedness to him, which was in excess of the $500, and that he completed the purchase as his own property, and that they should have the first chance to rent the property; that he replied that if the property would not cost $4,000 exclusive of said indebtedness, he would accept the proposition; but insisted that plaintiffs in error secure a lawyer and ascertain the amount due upon said premises; that they secured Walter A. Panneck to act for them, and that he reported to Hoerner that the amount due to Quinn was $2492.64 and that there was a mechanic's lien for $1,200 on the same, making a total of $3,744.75; that he paid said sum, and received a deed from the Quinn heirs for said property; and that prior to making said payment, plaintiffs in error, by their then attorney, Panneck, assigned said contract for a deed to him; that he gave them credit upon the books of the brewing company for $1,125; that thereafter he notified plaintiffs in error that they must handle the beer of said brewing company exclusively. The answer denied that said money so paid was a loan, and that said deed was intended as a mortgage; and alleged that since August 27, 1907, he had paid $24.34 insurance, and about $20 taxes on said premises; and admitted that in September, 1907, plaintiffs in error refused to take any beer from said company, and demanded a statement of the exact amount paid by defendant to the Quinn heirs and Hunter; that he refused to furnish such statement, because plaintiffs in error knew the amounts; and that, though urged to pay the rent for said premises, they had failed to do so; and also denied that he gave false testimony

before the justice, and that he fraudulently claimed to be the owner of the premises in full; also that said deed was intended to be a mortgage as security for said sums of money advanced by him; and alleged that he was the owner in fee of said premises; that he bought the same in good faith, and did not hold it as security for any sums of money advanced to plaintiffs in error; that they had no interest in the same equitably or otherwise; and denied all unlawful combinations, etc., and admitted that he began forcible entry and detainer proceedings for possession of said premises and obtained a judgment.

There was a trial, and at the conclusion of the evidence of plaintiffs in error, defendants in error moved the court to exclude, first, the testimony of Thomas N. Haskins on the ground that he was an attorney in the case; second, all the testimony of said Haskins as to conversations had with persons other than defendant in error, Hoerner, out of his presence; and also all the testimony of the witnesses Bartoletti and Picchiono as to conversations had by or with them out of the presence of defendant in error, Hoerner. The court sustained the motion to exclude the testimony of the witness Haskins, and that of plaintiffs in error as far as a conversation with Panneck was concerned. The court also excluded all the evidence, dissolved the injunction, and dismissed the bill for want of equity, and complainants sued out this writ of error.

Butters & Armstrong, for plaintiffs in error.

Browne & Wiley, for defendants in error.

Mr. Justice Willis delivered the opinion of the court.

The evidence shows that Thomas N. Haskins, who testified in behalf of plaintiffs in error, had been their attorney of record until four or five days before the

trial, but that did not disqualify nor render him incompetent to testify in their behalf. Bishop v. Hilliard, 227 Ill. 382. Nor would he have been disqualified had the record shown that he was their attorney at the time of the trial. It could only have affected his credibility. Glanz v. Ziabek, 233 Ill. 22; Domm v. Hollenbeck, 142 Ill. App. 439. It was error to exclude Haskins' testimony. There was evidence showing, that upon plaintiffs in error, Picchiono and Bartoletti, telling Haskins that they understood Hoerner had a deed to the property, Haskins asked Hoerner over the phone about it, and Hoerner referred Haskins to Panneck, and stated that Panneck had the matter in charge, and could tell him all about it. This made Panneck, Hoerner's agent or representative. Therefore, the testimony as to Haskins' conversation with him was competent, as was that of plaintiffs in error, Picchiono and Bartoletti. Panneck's statement was in the nature of original, and not hearsay evidence, relating to the ultimate fact to be proved, and not some other fact. Greenleaf on Evidence, vol. 1, sec. 113. "The admissions of a third person are also receivable in evidence against the party who has expressly referred another to him for information, in regard to an uncertain or disputed matter." Greenleaf on Evidence, vol. 1, sec. 182. It was therefore error to exclude conversations of Haskins, Bartoletti and Picchiono with Panneck, had out of the hearing of Hoerner.

All the documentary evidence shows Hoerner to be the absolute owner of the property. The assignment of the contract or bond for a deed was unqualified. The deed from the Quinn heirs to Hoerner was absolute, and Hoerner had a final judgment against plaintiffs in error for the possession of the premises.

"It is true, that a deed, which is absolute on its face, may be shown by parol to be a mortgage, but the law will presume, in the absence of proof to the contrary, that such a deed is what it purports to be —an absolute conveyance. He who claims such a

conveyance to be a mortgage, must sustain his claim by proof which is sufficient to overcome such presumption of the law, and by proof which is clear, satisfactory and convincing." Helm v. Boyd, 124 Ill. 370; Williams v. Williams, 180 Ill. 361.

The proof shows that about three minutes after Hoerner told Haskins that Panneck had the matter in charge, and could tell him all about it, and before Haskins had conferred with Panneck or plaintiff in error, Hoerner called Haskins and stated to him that he had the deed to the property before him, and that it was a straight deed to himself. This might modify the effect of his former statement. Later, Haskins met Panneck on the street, and said, "Does Hoerner claim to own this property or does he simply hold the deed as security?" and Panneck said, "He is simply holding it for the money advanced." Upon being asked to furnish a statement of the amount due, he told Haskins he would furnish it later, but could not at that time. While the proof shows that Hoerner said Panneck acted for him, yet two of plaintiffs in error who were present when the contract was assigned to Hoerner, testified that Panneck, who attended to the assignment, was their lawyer at that time, and had been for some time before. There was nothing in the conversation between Haskins and Panneck to show that plaintiffs in error promised to pay Hoerner the money advanced. There is some evidence tending to show that the assignment was intended to secure the money Hoerner had advanced, and there is proof that after Wiley became Hoerner's attorney, he furnished Haskins with a copy of a statement of the account made by Hoerner; but there is no evidence that plaintiffs in error ever offered to, or promised to pay the same, or any part thereof. Hoerner claimed that plaintiffs in error were largely indebted to him at the time of the assignment of the contract for other matters. Plaintiffs in error admitted that they owed him something on account of license, beer, etc,

He paid the Quinn heirs the balance due on the contract, and Hunter the amount of the mechanic's lien; and there was some evidence of an agreement, that, if plaintiffs in error paid him these advancements, and the debts they owed him, they would receive a deed.

In any view that can be taken of all the testimony, including that which the court excluded, it does not appear that there was any agreement on the part of the plaintiffs in error to do anything, or to pay any money, and the assignment of the bond does not secure any debt. A mortgage is security for a debt or obligation, and an incident thereto, and it is therefore held that a debt or obligation of some kind is an essential element in a mortgage. There is no contention on the part of plaintiffs in error that there is in existence any debt or obligation which Hoerner can enforce against them. He holds no note, or any other evidence of indebtedness against them, and their proof shows that the only debt he held against them, his book account which they owed him, he gave them credit for on his books before this assignment was, in fact, made to him.

It is held in Burgett v. Osborne, 172 Ill. 227, that one seeking to show that a deed absolute in form was intended as a mortgage, must prove that an obligation existed between the parties to the deed, which that instrument was intended to secure. Plaintiffs in error do not contend that there is any obligation in existence that defendant in error can enforce against them, nor do they contend that they have made any payments to defendant in error, or attempted to make any to apply on any such indebtedness. There being no debt which Hoerner could enforce against plaintiffs in error, there was nothing which a mortgage could secure. In Batcheller v. Batcheller, 144 Ill. 475, the court said: "The burden was upon appellants to prove that this agreement was in fact a security for a subsisting indebtedness. It is not enough that the

proof shall merely show a parol agreement to reconvey; there must be a continuing valid indebtedness secured by it, which may be enforced by appellee in an action at law, or it is not a mortgage, whatever else it might be."

In view of the conflict in, and uncertainty of the evidence in this case, it cannot be said that there is any clear, satisfactory and convincing proof as to the execution of the deed for the purpose of securing any indebtedness. Whether a deed absolute is a mortgage or not is a question which depends upon the intention of the parties, to be ascertained from all the circumstances of the case. It must be made to appear clearly that such a conveyance was intended to be a mortgage at the time of its execution. Burgett v. Osborne, *supra*. We find no evidence in the record sustaining the theory that the parties intended the deed in this case to be a mortgage, and the court did not err in dismissing the bill for want of equity at the close of plaintiffs in error's proof.

The bill was not framed to seek specific performance of a contract of sale, and hence no relief of that kind could have been granted, even if warranted by the proof.

The decree is affirmed.

*Affirmed.*