WILLIAM M. MAXFIELD *et al.*, Appellants, *v.* ALFRED PATCHEN, Appellee.

APPEAL FROM OGLE.

Where a transaction appears on its face to be a sale, when in fact it was only a mortgage, it is requisite that the facts should be made to appear clearly, and that subsequent purchasers were notified, or the right to redeem will not be allowed.

The fact that knowledge of such a transaction was brought home to a subsequent purchaser, should be plainly proved.

The conduct of the person who claims to be a mortgagor, will enter largely into the merits of his claim.

THE complainant and appellee, Alfred Patchen, having a pre-emption claim upon the land in question, applied to Henry A. Mix to furnish a land warrant with which to enter the land, and give him time for payment.

Mix was an attorney at law, and the agent of Thomas R. Greene for the sale of land warrants, and the business was done in the name of Mix, because " Greene thought he could get a higher price for warrants in that way."

Mix transferred to Patchen a land warrant, with which Patchen in person went to Dixon and entered the land in his own name.   Patchen had filed his declaration of pre-emption on the 14th of April, 1849.   The records of the land office show that Patchen entered the land by warrant, on the 9th of April, 1850.   On the same day, Patchen conveyed the land to Mix, and received a bond for a deed, giving his two promissory notes for $110 each, and payable in one and two years from the date thereof, with interest.   The deed to Mix, and

the bond to reconvey, were filed for record at the same hour of the following day. Patchen continued in possession until 1851, and paid the taxes up to the year 1855, when the appellant, Maxfield, took possession, and has since continued it.

Previous to Maxfield's possession, Patchen had removed his fences and house, but at what precise time the evidence leaves in doubt.

On the 20th of June, 1852, Mix conveyed the land by quitclaim to the heirs of Thomas R. Greene.

On the 6th of January, 1855, Elizabeth Greene, in whom had centered the title of the heirs of Thomas R. Greene, conveyed by deed of warranty to the appellant, Maxfield.

On the 19th of September, 1857, Patchen filed his bill to declare the transaction with Mix a mortgage, and to redeem. The decree was rendered on the 26th of March, 1861. On the 27th of the same month, the account was taken before the master, and on the 28th, his report was filed and confirmed.

The Circuit Court found, by its decree, that Maxfield purchased a mortgagee's interest, subject to the right of Patchen to redeem, and he was declared subject to all the liabilities of a mortgagee in possession. That Maxfield should deliver possession of the land and appurtenances immediately, and that he convey the same by deed within thirty days, etc., etc., and in case of failure by him to do so, then the master to convey. Maxfield and Greene appealed.

Hurd, Booth & Potter, for Appellants.

Gallup & Hitchcock, for Appellee.

Walker, J. Was the entry of the land by appellee, his conveyance of the same to Mix, and taking back a bond for a conveyance, upon payment of the price of the land warrant with which it was entered, a mortgage? If so, as it appeared on the face of the transaction to be a sale, did appellee waive the right to insist upon his rights as a mortgagee? If this was a mortgage, it was from circumstances outside of, and independent of, the written agreement. And if it was a transaction of that character, it is necessary that it should be

made to clearly appear, and that subsequent purchasers had notice of the nature of the transaction between appellee and Mix, or the right to redeem will not be allowed.

Even if this was in its inception a mortgage, the evidence that appellant had notice of that fact when he purchased, is not sufficient. The son of complainant testifies, that he had a conversation with appellant in 1857, in which he said he knew, when he purchased, that complainant had a pretended claim to the land. He does not testify, that appellant stated that he knew the nature of the claim. He did not say, that he knew that he had a right to redeem as a mortgagor, or to pay up the purchase-money and receive a deed. It does not appear, that he knew the nature of the transaction between complainant and Mix. It also appears, that he stated to a witness that he had leased an adjoining piece of land upon which to erect his house, so that if complainant held the land, he would not lose it. This is not evidence that he knew the nature of the transaction at the time of the entry. It only shows, that he was then aware that there was a claim that would be contested, and that he felt uncertain of the result.

But conceding that appellant was fully aware of all the circumstances of the case, from the time the land was purchased of the government up to the time of his own purchase, did he acquire the title, subject to be defeated by appellee's claim? It appears, that after appellant obtained the land for the conveyance, he erected a small building, and enclosed a small portion of the premises by a fence, but afterwards removed them. Complainant was urged by Mix to permit him to apply money in his hands, belonging to appellee, on the purchase, but he refused. Mix repeatedly urged him to pay, or he would be compelled to convey to the Greenes, which he neglected to do. Mix, to give appellee the opportunity of paying, got the matter delayed some months. Complainant stated to another witness, after the maturity of his notes, that he would lose his land. He, after appellant purchased of Greene, refused to pay the taxes, saying, that the collector would have to get them of appellant. And a motive for abandoning the land and the contract is found in the fact,

4

that there was other government land in the neighborhood, equal in quality, and subject to entry, at a lower price than it would have cost to pay for this tract.

We think the evidence is abundant to show, that appellee had abandoned the contract. It is true, he did not in terms say so, but all of his acts subsequent to the maturity of his notes seem to unmistakably indicate such a design. And had the land not been improved, or had it not appreciated in value, the presumption, from his previous conduct, is, that he would never have asserted this claim. To permit him to do so, would be to enable him to perpetrate a fraud upon appellant. If he purchased without notice, he must be protected. If, with full notice of all the circumstances, he was invited by the acts of appellee to believe that he had abandoned his claim, it would be inequitable and unjust to permit him to recover the premises, with the improvements and enhanced value of the land. Appellee has been guilty of laches, has stood by and failed to assert his right when it would have injured no person. He did no act, or even claim the right to enforce the contract, when it would have produced no injury. The right to treat this contract as a security for a loan, being a verbal secret understanding between the parties, not appearing in the written agreement, may be shown to have been voluntarily abandoned, altered or rescinded by the agreement of the parties. If it appeared in the written agreement, then a regular foreclosure, a release or satisfaction would be necessary. As between the parties themselves, the proof of abandonment or a rescission might be required to be more rigid than where the rights of third parties had intervened. This view of the case is fully sustained by the case of *Furgeson* v. *Tallmadge*, 20 Ill. 581. The decree of the court below is therefore reversed, and the bill dismissed.

*Decree reversed.*