### FANNIE N. DRESSER CRAMER

*v.*

### FREDERICK R. WILSON *et al.*

|202    83|
|114a ²138|

*Opinion filed February 18, 1903—Rehearing denied April 15, 1903.*

1. MORTGAGES—*parties may agree that deed intended as a mortgage shall be absolute.* A valid parol agreement may be made whereby payment of the debt secured by a deed absolute in form is abandoned and the deed regarded as an absolute conveyance although originally intended as a mortgage.

2. RES JUDICATA—*what must appear before doctrine of res judicata can be invoked.* Before the doctrine of *res judicata* can be invoked it must appear that the adjudication relied upon was between the same parties, suing or defending in the same capacity, and that it involved the same question presented in the suit at bar.

3. SAME—*when order denying petition to set aside sale is not an adjudication of title.* An order denying the petition of a bankrupt to set aside the sale of his interest in certain property by the assignee is not necessarily an adjudication that the bankrupt had any interest at the time of such sale, since the fact that he had no interest would furnish no reason why the sale should be vacated and the money returned to the purchaser upon motion of the bankrupt.

4. SAME—*what is not res judicata.* An order denying a bankrupt's petition to set aside the assignee's sale of his interest in property is not *res judicata* as to the extent of his interest in a subsequent proceeding, wherein he asserts a title acquired as devisee of the legal owner, who was in possession of the property during the bankruptcy proceeding, to which she was not a party.

5. JUDGMENTS AND DECREES—*effect where a decree setting aside tax deed fails to fix time for paying .money.* A decree setting aside tax deeds which fails to fix a definite period within which the amount found due, with interest, shall be paid to the holder of such deeds, may be modified by a court of review so as to fix such period.

6. JUDICIAL SALES—*doctrine of caveat emptor applies to sale of bank. rupt's interest in land.* The doctrine of *caveat emptor* applies to the sale of a bankrupt's interest in real estate by the assignee under an order of court, upon the petition of a creditor.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

F. W. BECKER, for plaintiff in error.

GEORGE GILLETTE, and DAVID K. TONE, for defendant in error Frederick R. Wilson.

CHILDS & HUDSON, for defendants in error Henry H. Gage and Taylor A. Snow.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed February 1, 1888, by the plaintiff, Fannie N. Dresser, (now Fannie N. Dresser Cramer,) in the superior court of Cook county, for the partition of certain premises described in the bill, located in the city of Chicago, between herself and Lilly Belle Dresser, who are alleged to be the owners of the patent title, Fannie N. being the owner of the undivided two-thirds and Lilly Belle the owner of the undivided one-third thereof. Henry H. Gage and Julia Wilson, who, it was alleged, held certain tax titles upon said premises, were made parties defendant, to the end, that the tax titles held by them, respectively, might be removed as clouds upon the title of Fannie N. and Lilly Belle Dresser in said premises. After the commencement of the suit Frederick R. Wilson appeared and suggested the death of Julia Wilson, testate, prior to the commencement of the suit, and that he was her sole legatee and executor, and the suit was abated as to Julia Wilson and Frederick R. Wilson was substituted as a defendant in

her stead, and filed an answer, in which he alleged that Julia Wilson was the owner of said premises at the time of her death, which occurred upon December 15, 1887, by virtue of a conveyance thereof made to her by him on July 6, 1877, and that the title thereto, upon her death, vested in him by virtue of her will, and that he was then the owner thereof. Henry H. Gage filed an answer setting up his tax titles, and averring that pending the suit he had purchased all interest of Lilly Belle Dresser in the premises and was then the owner thereof, and replications having been filed and the cause being at issue, but before final decree, it was developed that Frederick R. Wilson had been adjudged a bankrupt on August 31, 1878, and that Robert E. Jenkins was appointed his assignee; that as such assignee, by order of court entered on July 20, 1889, he sold all the interest of Frederick R. Wilson in said premises to Taylor A. Snow for the sum of $250; that the sale had been approved by the court, and that the court had refused to vacate the order approving the sale upon the application of Frederick R. Wilson. The pleadings were then amended, and Robert E. Jenkins and Taylor A. Snow were made parties defendant and appeared and filed answers, and Taylor A. Snow filed a cross-bill, which was also answered, and upon hearing a decree was entered finding that at the commencement of the suit Fannie N. Dresser and Lilly Belle Dresser were the owners of the premises; that after the commencement of the suit Lilly Belle Dresser conveyed her interest to Henry H. Gage, and that at the time the decree was entered Fannie N. Dresser owned two-thirds and Henry H. Gage one-third thereof in fee; that Julia Wilson died testate, and that Frederick R. Wilson took all the title and interest which she had in the premises at her death; that Robert E. Jenkins, assignee, sold all the interest of Frederick R. Wilson in the premises to Taylor A. Snow, which interest passed to Taylor A. Snow under said sale, and that Fannie N.

Dresser and Henry H. Gage had an amicable arrangement with said Taylor A. Snow as to his title. Frederick R. Wilson sued out a writ of error from this court to review said decree, and the decree was reversed (*Wilson v. Dresser*, 152 Ill. 387,) and the cause remanded, with directions to the superior court to allow such amendments to the pleadings as either party might desire to make, and to allow either of them to offer any additional competent proof. Upon the cause being re-instated in the superior court the pleadings were amended, but not in such manner as to change the issues presented on the former trial, and some additional evidence was offered. The cause was heard in open court and a decree entered in favor of Frederick R. Wilson establishing his title to the premises, subject to the payment of $3162.62 for taxes and interest in favor of Henry H. Gage, and Fannie N. Dresser has sued out this writ of error to reverse said decree, and Henry H. Gage and Taylor A. Snow have each assigned cross-errors.

It appears that Fannie N. Dresser, shortly prior to the commencement of this suit, was the owner of the patent title to the premises sought to be partitioned; that for the purpose of clearing her title of the claim of Julia Wilson, who, together with her grantor, had been in possession of the premises under a tax title since May 24, 1864, she, through an arrangement with Henry H. Gage, who also held certain tax titles upon the premises but was out of possession, conveyed the undivided one-third of said premises to Lilly Belle Dresser for the consideration of one dollar, and thereupon filed a bill against Lilly Belle Dresser for a partition of the premises, making Henry H. Gage and Julia Wilson parties defendant, and set up their claims, respectively, under the said tax titles, alleging that said tax titles were invalid, and asked to have the same set aside as clouds upon the patent title to the premises, and averred that she and Lilly Belle Dresser were unable to agree upon a division of

the premises and prayed for a partition thereof. The suit was clearly collusive as between Fannie N. Dresser, Lilly Belle Dresser and Henry H. Gage, as there was no matter in controversy between them, or either of them, in regard to the title or the partition of said premises, as it appears from the recitals in a contract in writing between the Dressers and Henry H. Gage, found in the record, that on the same day that Fannie N. conveyed a one-third interest in the premises to her sister, Lilly Belle Dresser, and on the day before the bill was filed, the Dressers claimed to be the owners of the premises; that Henry H. Gage desired to purchase such interests; that the Dressers were to institute proceedings to clear the title thereto from adverse claims, and that when the title had been cleared the premises were to be conveyed to Henry H. Gage. It further appears that soon after the suit was commenced Lilly Belle Dresser conveyed her interest in the premises to Henry H. Gage, and the court found in the first decree which was entered in this case, that Fannie N. Dresser and Henry H. Gage had entered into an amicable arrangement with Taylor A. Snow in regard to the interest which he had in said premises, derived through the assignee's sale.

What action the court should have taken with reference to a dismissal of the case had a motion been made to dismiss as soon as it appeared that the Dressers, Jenkins and Snow were only nominal parties and that Henry H. Gage was the real party in interest, and that the only interests adverse to each other were those of Henry H. Gage and Frederick R. Wilson, need not be decided, as that question was not raised below, and a final decree having been entered upon the merits, we will consider the same upon its merits here.

The validity of the tax titles held by Henry H. Gage will not be considered. They are held invalid by the decree, and no attempt is made to sustain them in argument or to point out to this court wherein the court erred

in holding them invalid. The only objection made to the decree in that regard is, that it did not fix a time when the amount of money found to be due Henry H. Gage on account of taxes paid by him should be re-paid to him by Frederick R. Wilson.

The court below found that Frederick R. Wilson had a good title to the said premises under the twenty years Limitation Statute, and the objections urged against the holding of the court are, *first*, that the possession of said premises was not delivered to Julia Wilson on July 6, 1877, or at any other time after the time Frederick R. Wilson conveyed the same to her, the effect of which, it is said, was to stop the running of the Statute of Limitations; and *second*, that the title of Frederick R. Wilson was divested by the assignee's sale and transfer to Taylor A. Snow, and that that question is *res judicata* by reason of the proceedings had in the United States District Court, wherein the bankruptcy proceedings were pending.

The premises were sold for taxes, and Frederick R. Wilson received a tax deed therefor on May 24, 1864, and immediately went into possession thereof and remained in possession until July 6, 1877, when he conveyed the premises to his sister, Julia Wilson. Frederick R. Wilson testified, and he is not contradicted, that Julia Wilson took possession of the premises on July 6, 1877, and remained in possession thereof, through her tenants, until the time of her death, December 15, 1887, when he resumed possession as devisee under the will of Julia Wilson, deceased, from which it appears that Frederick R. Wilson and Julia Wilson had been in possession of the premises more than twenty years prior to the commencement of this suit. That the possession of Frederick R. and Julia Wilson was adverse, during that period, to the owners of the patent title, is too plain for argument. It is said, however, that the testimony of Frederick R. Wilson to the effect that Julia Wilson took possession under the deed made by him to her and remained in possession

until her death is uncertain and contradictory and not worthy of belief. The chancellor heard the testimony of Frederick R. Wilson and was in a better position than we to say whether or not it should be believed, and we cannot say it is manifestly untrue. (*Van Vleet* v. *DeWitt*, 200 Ill. 153.) When the case was here before, the testimony on that proposition was substantially the same as it is found in this record, and in considering the proposition as it was then presented it was said (p. 390): "He shows a deed to himself for the property from the city of Chicago, dated May 24, 1864, and that he and his sister, Julia Wilson, remained in possession to the bringing of this suit." And again (p. 391): "The evidence shows that at that time [the time when Frederick R. Wilson was adjudged a bankrupt] he had no interest, having more than a year prior to that date, July 6, 1877, conveyed it to Julia Wilson, and the evidence is undisputed as to the fact that she took possession under that deed and retained it, by her tenants, to the date of her death, and that her tenants remained in such possession when this suit was begun."

We think the evidence justified the chancellor in holding that Frederick R. and Julia Wilson were in possession of the premises for more than twenty years prior to the bringing of this suit, and that Frederick R. Wilson had a good title by limitation, unless it was cut off and defeated by the assignee's sale to Taylor A. Snow. If Frederick R. Wilson sold and conveyed the premises to Julia Wilson on July 6, 1877, and she took possession of the premises, it is plain that at the time he was adjudged a bankrupt, August 31, 1878, he had no title to the premises which his assignee could sell and convey, and that Taylor A. Snow took no title at such sale. It is said, however, that the deed to Julia Wilson was not an absolute sale, but was made to secure a debt, and was constructively a mortgage, and that an equity of redemption remained in Frederick R. Wilson, which would pass to

Snow as purchaser at the assignee's sale. Frederick R. Wilson testified that at the time the deed was made and delivered he was indebted to his sister, Julia, and that the premises, together with a large number of other lots in Chicago in which he had an interest, were conveyed to her to secure the payment of said indebtedness, but that in a short time thereafter, he being unable to pay the taxes on the property and finding he could not re-pay to her the amount due her, it was agreed between them that the conveyance should be considered an absolute sale, and it was thereafter treated by them as an absolute sale and conveyance of the interest in said premises of Frederick R. Wilson to Julia Wilson. The conveyance, under that arrangement, became absolute long before Frederick R. Wilson was adjudged a bankrupt.

We have repeatedly held that when land has been transferred by a deed absolute in form, though intended as a security for the payment of a debt, the payment of the debt may be abandoned and the deed treated as an absolute conveyance although originally intended as a mortgage, and that such arrangement may be made by parol and be binding. (*Maxfield* v. *Patchen,* 29 Ill. 39; *West* v. *Reed,* 55 id. 242; *Carpenter* v. *Carpenter,* 70 id. 457; *Seymour* v. *Mackay,* 126 id. 341; *Scanlan* v. *Scanlan,* 134 id. 630.) In *Maxfield* v. *Patchen, supra,* it was said (p. 42): "The right to treat this contract as a security for a loan, being a verbal secret understanding between the parties not appearing in the written agreement, may be shown to have been voluntarily abandoned, altered or rescinded by the agreement of the parties. If it appeared in the written agreement, then a regular foreclosure, a release or satisfaction would be necessary." In *Carpenter* v. *Carpenter, supra* (p. 462): "While it is true Felt held as mortgagee, the complainant had the right to abandon the payment of the debt and cancel the secret agreement between him and Felt, and treat the conveyance to Felt as an absolute deed instead of a mortgage."

The United States District Court on June 27, 1889, upon the petition of George A. Severns, a creditor of Frederick R. Wilson, ordered Wilson's assignee to sell all the interest of Frederick R. Wilson in the premises in question. The assignee advertised the same for sale, and on July 20, 1889, sold the interest of Frederick R. Wilson therein to Taylor A. Snow for $250, and on July 22, 1889, said sale was confirmed. On September 17, 1889, Frederick R. Wilson filed a petition in said court to set aside and vacate the sale and the order confirming the same, and the prayer of the petition was denied. We are of the opinion that order is not *res judicata* of the question involved here, for the reason that the assignee was directed to sell only the interest of Frederick R. Wilson in the premises, which was the interest which he had on August 31, 1878,—the day on which he was adjudged a bankrupt. On that day he had no interest in the premises. The doctrine of *caveat emptor* applied to the sale and the purchaser obtained nothing, but as he had purchased and paid to the assignee $250 for the interest of Frederick R. Wilson in the property, which became an asset for the payment of debts, the court might readily decline to set aside the sale, although it was apparent that Frederick R. Wilson had no interest in the premises sold and that the purchaser obtained no title thereto. The purchaser obtained all that was sold, viz., the interest of Frederick R. Wilson in the premises. If Wilson had no interest in the premises the purchaser obtained no interest by his purchase. He obtained, however, all he bought, and the fact that Frederick R. Wilson did not own the property was no reason why the sale should be vacated and the $250 paid to the assignee as purchase money returned to Taylor A. Snow on the petition of Wilson. The refusal of the court to set aside the sale and vacate the order confirming the same was not an adjudication that Frederick R. Wilson was the owner of the premises or had any interest therein, as that question

was not necessarily involved in the proceeding, and it does not appear that it was adjudicated, the record simply being to the effect that the prayer of the petition to vacate the order approving the sale and to set aside the sale was denied. Furthermore, the interest the assignee sold to Taylor A. Snow was the interest of Frederick R. Wilson, and not the interest of Julia Wilson. The interest in the premises which Frederick R. Wilson now claims in this suit is the interest which he received as devisee under the will of Julia Wilson. The United States District Court passed, at most, upon the question of whether or not Frederick R. Wilson had an interest in the premises which passed to his assignee when Wilson was adjudged a bankrupt, and did not attempt to, and could not, settle the interest of Julia Wilson in the premises. Suppose the proceedings in the United States court had taken place during the lifetime of Julia Wilson and the same orders had been made which were made; would it be claimed they would be binding upon Julia Wilson and she deprived of this property? Not having been a party to the proceeding she would not be bound by the order of sale or the order refusing to set aside the order of confirmation; then why should her devisee be bound, be he Frederick R. Wilson or a stranger? In other words, the title under which Frederick R. Wilson now claims was not adjudicated upon by the United States District Court, but if any title was passed upon it was another and different title,—that is, the title of Frederick R. Wilson,—and an adjudication as to his title is not an adjudication of the title now before the court, which he obtained through the will of Julia Wilson, deceased. The question now before the court is not, therefore, *res judicata.*

Before the doctrine of *res judicata* can be invoked here it must appear that the adjudication relied upon was between the same parties, suing or defending in the same capacity, and that it involved the same question which

is now presented for judicial determination. The question presented for determination in this suit is not identical with that passed upon by the United States District Court, and one of the parties appearing here appeared there in a different capacity from what he does here. In *McCartney* v. *Osburn*, 118 Ill. 403, it was said (p. 410): "Before a former decision can be successfully invoked as an estoppel in another suit between the same parties, it must appear that the question is the same in both cases and that the court in the former suit had power and jurisdiction to determine it." And in *White* v. *Sherman*, 168 Ill. 589 (p. 612): "Former adjudication, to constitute a bar, must have been on what was actually in issue, and the determination of which was essential to the judgment." In *Rathbone* v. *Honey*, 58 N. Y. 463, the court said (p. 467): "A judgment against a party sued as an individual is not an estoppel in a subsequent action in which he sues or is sued in another capacity or character. In the latter case he is, in contemplation of law, a distinct person and a stranger to the prior proceedings and judgment.—*Robinson's case*, 5 Co. 32, 36; *Jackson* v. *Mills*, 13 J. R. 463; *Sinclair* v. *Jackson*, 8 Cow. 565; *Jackson* v. *Hoffman*, 9 id. 271."

In *Wilson* v. *Dresser, supra*, after discussing the sale to Julia Wilson, the court said (p. 390): "Manifestly, then, the case must turn upon whether the superior court erred in finding against him [Frederick R. Wilson] on his claim of title, on the ground that it was divested by the assignee's sale and conveyance to Snow. That he had possession under his deed and that he conveyed to his sister, Julia Wilson, is not denied. It must also be conceded that if she owned the property at the time of her death, it passed, under her will, to him. It does appear that about a year after he made the deed to his sister he went into bankruptcy, and it is claimed by defendants in error that on the motion of his creditors he was adjudged to still be the owner of the property, and the same was or-

dered sold and afterwards conveyed by his assignee to the purchaser." After passing some criticism upon the abstract the court proceeds: "But the evidence shows that at that time he had no interest, having more than a year prior to that date, July 6, 1877, conveyed it to Julia Wilson, and the evidence is undisputed as to the fact that she took possession under that deed, and retained it, by her tenants, to the date of her death, and that her tenants remained in such possession when this suit was begun. There being nothing to show that that deed was ever set aside or the property adjudged to remain in plaintiff in error, how can it be said that Julia Wilson did not die seized of it? Suppose she had willed it to a third party; would it be seriously contended, under the evidence shown in this abstract, that such third party took no title under the will? We certainly think not. And we find nothing in this record upon which to base a distinction between the rights of plaintiff in error and any other devisee to whom she might have willed it."

The decree should have fixed a definite period within which Frederick R. Wilson should pay the amount, with interest, found to be due Henry H. Gage. *Gage* v. *Schmidt,* 104 Ill. 106; *Gage* v. *Thompson,* 161 id. 403; *Glos* v. *Brown,* 194 id. 307.

The decree of the superior court will therefore be modified so as to require the amount found to be due Henry H. Gage, with interest at five per centum per annum from the date of the decree, to be paid within ninety days from the date of the entry of judgment in this court, and that in default of payment the bill stand dismissed as to Henry H. Gage, so far as it affects the tax titles held by him upon said premises, and that Henry H. Gage recover his costs in this court and in the court below, and that he have execution therefor. The decree is affirmed in all other respects.    *Decree modified and affirmed.*